(156 App. Div. 263.)

### JACOBS v. BERNSTEIN et al.

(Supreme Court, Appellate Division, First Department. April 18, 1913.)

1. GUARANTY (§ 16*)—CONSIDERATION—SUFFICIENCY.

Defendants sent silk to one N. for weaving under an agreement that, while the silk was to remain the property of defendants, they would charge to N. the silk sent him, and he would charge them with the finished silk returned to them as a convenient means of bookkeeping. N. arranged with plaintiff to discount his bills against defendants, and collect them from defendants. In a conversation between plaintiff and one of the defendants he stated that he did not care to extend credit further, but, on such defendant's promise to meet the bills promptly, agreed to extend additional credit, and to allow N. to ship additional silk. N., at the time, was indebted to defendants in an amount exceeding the bills held by plaintiff. *Held* that, the title to the silk being in defendants, plaintiff's agreement to permit N. to make further shipments was not a sufficient consideration for defendants' agreement to pay plaintiff the amounts advanced by him to N.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 14–17; Dec. Dig. § 16.*]

2. SET-OFF AND COUNTERCLAIM (§ 21*)—ESTOPPEL—GROUNDS—SILENCE.

A party will be estopped from asserting as a defense to a claim against him a counterclaim which otherwise would be available where he has kept silence, when good faith made it his duty to speak.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 25; Dec. Dig. § 21.*]

3. SET-OFF AND COUNTERCLAIM (§ 21*)—ESTOPPEL—GROUNDS—SILENCE.

Defendants sent silk to one N. for weaving under an agreement that title should be in defendants, but that for convenience in bookkeeping the silk sent N. should be charged to him, and the finished article when returned charged to defendants. N.'s bills against defendants were discounted and collected by plaintiff. In a conversation between plaintiff and one of the defendants at a time when plaintiff was holding bills amounting to $1,877, he stated that he did not care to extend further credit, but, in reliance on defendant's representation that they would meet the bills promptly, agreed to extend additional credit. N. was then indebted to defendants in an amount exceeding the bills held by plaintiff, but plaintiff was not informed of this fact. *Held*, that defendants, by their failure to inform plaintiff as to the state of the accounts between them and N., were estopped to set up N.'s indebtedness as a counterclaim to the bills subsequently discounted, but were not estopped to set them up as an offset to the bills previously discounted; plaintiff not having advanced any money on them in reliance on any act or omission of defendants.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 25.; Dec. Dig. § 21.*]

Appeal from Trial Term, New York County.

Action by Morris E. Jacobs against Julius A. Bernstein and another. From a judgment for plaintiff, and an order denying a new trial, defendants appeal. Reversed and new trial granted, unless plaintiff stipulates to reduce recovery.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Samuel Meyers, of New York City, for appellants.

Walter J. Rosenstein, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J. The plaintiff sues as assignee of one Nathanson, and the only question involved is as to the allowance of a counterclaim in favor of defendants. The defendants and Nathanson did business together under a written contract, whereby defendants agreed to consign to Nathanson from time to time what is described as thrown silk, which was to remain at all times the property of defendants, and which Nathanson was to weave into the finished product known as broad silk, and immediately upon weaving was to deliver the finished product to defendants. Defendants were to charge Nathanson with the thrown silk delivered to him, and he, in turn, was to charge defendants with the finished silk delivered to them; it being explained in the contract that this method of charging and counter charging was adopted simply as a convenient means of bookkeeping and to avoid disputes between the parties when the finished product was delivered. Under this arrangement, defendants rendered bills to Nathanson for thrown silk delivered to him, and he, in turn, rendered bills to them for finished silks delivered to them. In September, 1910, Nathanson made an arrangement with plaintiff to finance his business by discounting his bills. Plaintiff, who describes himself as a commercial banker, would advance Nathanson a certain percentage of each bill, taking an assignment of the amount apparently due thereon. When the bill was collected, he would pay Nathanson the amount of the bill less the sum previously advanced, and also less a commission. The bills were stamped with a notice of their assignment to plaintiff, and in that condition sent to the debtor. When plaintiff first began to discount Nathanson's bills against defendants, the latter held claims against Nathanson largely exceeding any amount they owed him.

On October 21, 1910, plaintiff and the defendant Bernard Bernstein had a conversation respecting the bills against defendants then held by plaintiff. These parties differ radically as to what took place at that interview; but, as the jury by their verdict indicate that they believed the plaintiff, we shall assume that his version is correct. He testified that he then held bills against defendants amounting to $1,877, and that he told Bernstein that he did not care to extend further credits to defendants. Bernstein said that Nathanson had on hand some finished silk which defendants much desired to receive, and proceeded to convince plaintiff that their financial standing entitled them to more credit. The witness said:

"I then told him that I would extend him a credit up to—to owe me up to $2,500, if these bills that are now due me, $1,877 and some cents, if you meet these promptly, as the bills stipulate, payable to me, and the additional, that I would allow Mr. Nathanson to ship more merchandise, and if he owes me over $2,500 he must anticipate some of the bills; that I at no time will allow him to owe me more than $2,500, and this he agreed to. He said, 'I know I owe you that money, and I will meet my bills promptly;' and that is about the end of the conversation as far as I can remember."

At this time Nathanson was indebted to defendants for thrown silk delivered in an amount as to which there is some dispute, but which largely exceeded the $1,877 for which plaintiff held bills against defendants. After this conversation, plaintiff acquired further bills against defendants which brought up his total claims, allowing for certain discounts and allowances, to $2,893.51.

Bernstein did not inform plaintiff at the interview of October 21st that he held a counter charge against Nathanson exceeding the amount of defendants' apparent indebtedness to Nathanson, nor was the plaintiff apparently aware of that fact.

[1] The case was sent to the jury with a charge that, if the conversation between plaintiff and Bernstein was as was testified to by the latter, then plaintiff was entitled to recover the whole amount of his claim, because the agreement of plaintiff to permit Nathanson to make further shipments to defendants furnished a sufficient consideration for what was deemed to be defendants' new promise to pay the plaintiff the full amount of his claim. We are of opinion that this instruction was erroneous. Under the agreement between defendants and Nathanson, the former held at all times the actual ownership of and title to the silks, and was absolutely entitled to receive them as soon as finished. It was no concession to defendants to "permit" Nathanson to deliver their own property to them, and therefore no consideration passed from plaintiff to defendants for any new or independent promise to pay plaintiff the apparent claims against them which he then held.

[2] The plaintiff relies, however, upon a well-established rule that under certain circumstances a party will be estopped from asserting as a defense to a claim against him a counterclaim which, but for his own acts, would be perfectly available. Such an estoppel arises where a party keeps silence when good faith would make it a duty to speak. House v. Brilliant, 46 Misc. Rep. 432, 92 N. Y. Supp. 325. As was said in Chemical Nat. Bank v. Kellogg, 183 N. Y. 92-95, 75 N. E. 1103 (2 L. R. A. [N. S.] 299, 111 Am. St. Rep. 717, 5 Ann. Cas. 158):

"Whoever conceals facts required by good faith and fair dealing to be disclosed, acts inequitably, and will not be permitted to assert those facts to the injury of one misled by such conduct."

[3] When Bernstein had his interview with plaintiff on October 21, 1910, and asked plaintiff to make it possible for Nathanson to ship more goods, he must have known that in consenting to do so the plaintiff relied upon collecting the bills for such goods from defendants. It was Bernstein's duty then in good faith to have informed plaintiff of the relations between his firm and Nathanson and the state of the accounts between them. Having failed in this duty, and by his silence induced plaintiff to increase the amount of his investment in Nathanson's bills against defendants, the latter cannot now offset against the advances made after that conversation any counterclaim they may have against Nathanson. This rule does not, however, apply to the $1,877 advanced before the conversation, because that advance was not made in reliance upon anything defendants had done or neglected to do.

The judgment and order appealed from must therefore be reversed, and a new trial granted, with costs to appellants to abide the event, unless plaintiff stipulates to reduce the recovery to the sum of $1,016.51, with interest from January 3, 1911, in which case the judgment as so reduced and modified will be affirmed without costs to either party. All concur.

141 N.Y.S.—19