## MARY A. P. BLETHEN v. W. A. BONNER ET AL.

### Decided December 6, 1902.

1.—Husband and Wife—Law of Another State—Community or Separate Property.

Where a husband and wife were married in Massachusetts, and by virtue of the common law rule prevailing there her personal property became the husband's, and twenty years later he came to Texas and purchased land with money acquired during the coverture, the wife was not entitled to claim a community half interest therein by virtue of the Texas law.

2.—Same—Domicile.

Where the husband came to Texas and remained several years, and then went back to Massachusetts, thinking he might return to Texas, but lived back there for twenty years without intent to live anywhere else, such facts did not show that he obtained a domicile in Texas and was temporarily absent therefrom, so that the marital rights as to property acquired in Massachusetts should be determined by the Texas law.

3.—Same—Loan by Wife—Trust.

The mere fact that the wife loaned to the husband certain money reserved as her separate funds by antenuptial contract, but without any specific agreement as to its application by him, would not give her an equitable interest in land afterwards bought by the husband and that would otherwise belong to him alone.

Appeal from the District Court of Bosque County. Tried below before Hon. Wm. Poindexter.

*N. J. Wade,* for appellant.

*H. S. Dillard, Eugene Pedigo, N. R. Morgan, Richard Kimball, Robertson & Robertson,* and *W. A. Bonner,* for appellees.

CONNER, CHIEF JUSTICE.—A history of this case in detail may be found in the opinion of this court on a former appeal (52 Southwestern Reporter, 571), and in the opinion of the Supreme Court on writ of error (53 Southwestern Reporter, 1016), but it is perhaps proper that we here give a brief resume of the facts most favorable to appellant.

Appellant and appellee Levi B. Blethen were married in Boston, Mass., March 10, 1863, and lived together as husband and wife until in April, 1865, when they separated. There was an antenuptial contract, by the terms of which, among other things, $400 in bank was reserved to the wife as her separate property. At the time of the marriage the husband owned and operated a milk business which appellant testifies was unpaid for, and in part payment of which that the husband used said $400. During the time the parties lived together, and subsequently until 1878, when he moved to Texas, the husband accumulated in Massachusetts from said milk business about $25,000, which he brought with him to Texas, and therewith purchased the land in controversy. After the separation above stated the parties never lived together as husband and wife, although no divorce was procured until the husband secured a decree therefor in Bosque County, Texas, January 20, 1880, of which, however, appellant had no actual knowledge until about the time of the institution of this suit; her residence and domicile at all times herein named being in Massachusetts. Appellant's suit is against Levi B. Blethen and other appellees who claim as subsequent purchasers from him, for a community interest in the Texas land so purchased by L. B. Blethen. In default of this it is now insisted that there should at least be a decree establishing a trust in said lands to the extent of said $400 used by the husband as above stated. The defense on the part of appellee L. B. Blethen is that the money with which said land was purchased, by the common law in force in the State of Massachusetts, became his separate property, and continued to be so until the time of its investment in Texas, as stated, and that appellant therefore never had nor held and community interest in the lands in controversy; and he also denies the facts relied upon as presenting the trust feature of appellant's case.

From this statement we think it apparent that if the defense of L. B. Blethen as above stated be uncontrovertibly established by competent evidence, as we think it is, the court did not err as assigned in giving the peremptory instruction to the jury to find for appellees, and that it hence becomes unnecessary to consider questions relating to the issue of bona fide purchaser for value and without notice presented by appellees other than L. B. Blethen.

On the trial from which this appeal has been taken appellees not only introduced in evidence the clause of the Constitution of the State of Massachusetts set out in our former opinion in this case, but also by two competent, qualified witnesses, who are uncontradicted, proved that the common law without modification was in force in that State from January 1, 1863, to December 31, 1878, in respect to the ownership of

personal property by married men acquired by them in the State of Massachusetts. This being true, it follows that the money earned during the marital relation with which the land in controversy was purchased, by the law of Massachusetts, became the separate property of Levi B. Blethen before his removal from that State and the time of its investment in this; and that, being clearly traced, said lands became affected with the like quality by virtue of the rule of decision in Texas. No community interest, therefore, in such land ever vested in appellant. See Oliver v. Robinson, 41 Texas, 422; Hall v. Harris, 11 Texas, 305; Rose v. Houston, 11 Texas, 323; Blethen v. Bonner, supra, and authorities therein cited.

It is suggested that this view involves the enforcement of the laws of a sister State by a Texas court in the disposition of property here situated. But not so. We have merely ascertained the law of Massachusetts as a fact in determining the quality or extent of the title to money acquired in Massachusetts by a citizen or citizens of that State, and thereafter brought into and invested in this State. It may seem that Massachusetts, the boasted center of advanced thought, should long since have discarded the rule invoked in behalf of L. B. Blethen and relegated it to its place among the rejected barbarisms of the common law. But whatever may be our opposition to the common law in this particular and the extent of our admiration for the rule of the civil law, so firmly imbedded in the hearts and jurisprudence of the Texas people, that the fruits of the joint efforts of husband and wife shall be shared equally between them, the power of the people of Massachusetts to determine for themselves the conditions upon which her citizens may acquire and hold property within her own borders must be conceded, and we have no power to alter the status of property fixed and vested by such laws before its introduction into this State. We have simply determined the character of L. B. Blethen's title to the money with which the lands in controversy were purchased, as a fact, and applied thereto the law of Texas.

Neither is our conclusion in anywise affected by the fact that appellant never became a resident of Texas; nor in our judgment is it material that the separation may have been induced by harsh or cruel treatment on the part of L. B. Blethen, as evidence offered by appellant perhaps tended to prove, and to the exclusion of which error is assigned. And, if otherwise material, we find no evidence supporting the contention that where a husband acquires a domicile in Texas and temporarily removes to another State where he is married and acquires property, the marital rights therein are to be governed by the laws of Texas. True, L. B. Blethen testifies that he first came to Texas in 1853 and remained several years, whereupon he went to Massachusetts, thinking he might return. The evidence, however, fails to show that he acquired a fixed domicile in Texas prior to 1878, or that at the time of the marriage there was a purpose to return; while it is undisputed that for more than twenty years after his marriage he lived in Massa-

chusetts without intent "to live anywhere else." So that in no phase of the case suggested do we feel that appellant's case on the issue of community interest is maintainable.

The only remaining material question arises out of the asserted equity by reason of L. B. Blethen's use of appellant's $400 as above stated. If it be conceded that the issue is raised by the pleadings, we are of opinion that the evidence thereto relating is wholly in favor of appellees. L. B. Blethen testified to the effect that the milk route had been purchased by him for $1000 cash in hand in 1859; that the proceeds from its sale had not been used in the purchase of the land in controversy, and that the wife's $400 had been used by him in the payment of current expenses. Appellant, however, testified on this subject as follows: "My husband, L. B. Blethen, had bought a milk route in Boston, Mass., but had not paid anything for it at the time of our marriage. He had no property at the time he married me. He was insolvent, that is he could not pay his debts, and had nothing to pay them with. I do not know whether he had any debts outside of what he owed for the milk route. At the time of our marriage I had about $1000. Mr. Blethen teased me so much that I took out $410 from the Provident Savings Bank and let him have $400 of it. I find on looking at my diary that I took it out and gave it to him January 28, 1864. He put it into the milk route which he was running, and by that means was able to keep it until he sold it some time afterwards. This was the $400 described in the antenuptial contract as being in the Provident Savings Bank. None of it has ever been paid back to me. He tormented me so that I drew the money out of the bank for him. He gave me no peace; he kept teasing me for the money. He used it to pay for his milk route. L. B. Blethen never gave me any actual notice or knowledge that he was holding adversely to me, and I knew absolutely nothing about his owning lands in Texas."

This evidence, and there is none other of contrary probative force, does not, in our opinion, raise the issue of the trust interest asserted. If it be conceded that L. B. Blethen used said $400 in part payment of the milk route theretofore purchased, and that by virtue of that fact and the antenuptial contract appellant acquired an equitable interest to that extent in it, there is nevertheless nothing in the evidence to contradict L. B. Blethen's testimony to the effect that no part of the proceeds of the sale of the milk route went into the land in question. At all events, by the common law, the revenues arising out of the operation of the business, which was not included in the antenuptial agreement, became L. B. Blethen's separate estate, and from this source only it appears came the purchase money. As a matter of fact, however, we think appellant's evidence fails to show that she ever acquired an interest in the milk route. At most her testimony shows an ordinary case of a mere loan of the wife's separate funds to the husband, without specific agreement as to its application, and we know of no case,

and none has been cited, which holds that such circumstances will vest in the wife title to property which would otherwise belong to the husband alone.

We think the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.