## Chemical National Bank of New York, Respondent, *v.* Amy H. Kellogg, Appellant.

1. Bills, Notes and Checks — Estoppel in Pais.   Commercial necessity requires that only slight evidence should be insisted upon to establish an estoppel *in pais* as to the validity of commercial paper; therefore, the face of the paper itself, when free from suspicion, is sufficient evidence, in the absence of notice, against all who aid to put it into circulation in that condition, unless the note is void by the positive command of a statute.

2. Negotiable Instruments Law — Lex Loci Contractus.   An indorsement in blank of a promissory note dated and payable in the state of New York is presumed both at common law and under the statute to have been made here, and one discounting the note in good faith is entitled to rely upon that presumption.   (L. 1897, ch. 612, § 76.)

3. Same.   A married woman who at her residence in the State of New Jersey indorses in blank and solely for his benefit her husband's promissory note, dated and payable in the State of New York where it is discounted in good faith, without notice that the indorser was a non-resident, or that the indorsement was made in another state, is estopped from denying that her indorsement is a New York contract and from claiming that it is a New Jersey contract, the laws of which state do not permit a married woman to become a simple accommodation indorser.

*Chemical Nat. Bank* v. *Kellogg*, 87 App. Div. 633, affirmed.

(Argued October 19, 1905 ; decided November 21, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 30, 1903, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

This action was brought upon a promissory note, of which the following is a copy :

"$1,500.                          New York, *June 7th,* 1898.

"Four months after date I promise to pay to the order of myself Fifteen Hundred Dollars at No. 4 Warren Street, New York.   Value received."

(Signed)     " D. M. KELLOGG." 
(Indorsed)   " D. M. KELLOGG.
             " AMY H. KELLOGG."

The defendant is an accommodation indorser, who indorsed the note at her residence in Oak Tree, New Jersey, at the request of the maker, her husband, and there delivered the same to him, solely for his benefit. The plaintiff, a banking corporation in the city of New York, discounted the note in the ordinary course of business, without notice that the indorser was a non-resident or that the indorsement was made in another state, and used the proceeds to take up a prior note held by it. The defendant " did not authorize said note to be negotiated in New York State, and had no knowledge that it was to be used in that state." By the laws of the state of New Jersey a married woman is not liable as an accommodation indorser, guarantor or surety unless it appears that she or her separate estate has derived some benefit from the contract.

Upon these facts, which were found or stipulated, the trial court held the defendant liable on the ground that her indorsement was a New York contract. The Appellate Division unanimously affirmed and the defendant came here.

*Frederick H. Kellogg* and *P. A. Hargous* for appellant. The note was a New York contract, having been made in that state and payable there. The contract of indorsement or suretyship was a separate and independent contract, made in the state of New Jersey and governed by the laws of that state. The first was made by and between the maker of the note and the plaintiff, the second by and between the maker and the defendant. (*Smith* v. *Weston*, 88 Hun, 25; *Bank of Monongahela Valley* v. *Weston*, 159 N. Y. 201; *Breedlove* v. *Fletcher*, 7 Mart. 524; *Spies* v. *Nat. City Bank*, 174 N. Y. 222.) The defendant's contract of suretyship is to be governed by the laws of New Jersey where the contract was made. (Daniel on Neg. Inst. [5th ed.] 884, § 865; Story on Conf. of Laws, §§ 103, 241; Kent's Comm. notes 458, 459; *Scudder* v. *U. Nat. Bank*, 91 U. S. 406; *Webb* v. *J. H. Ins. Co.*, 66 L. R. A. 632; *Field* v. *Noblett*, 154 Ind. 362; *McClain* v. *Davis*, 77 Ind. 419; *Vories* v. *Nussbaum*, 131 Ind. 267; Edwards on Bills, 333; *Grimes* v. *Hillenbrand*,

4 Hun, 354; *Vallett* v. *Parker*, 6 Wend. 615.) Defendant is not estopped from denying that her agreement was a New York contract. (*B. T. Co.* v. *Souther*, 182 Mass. 413; *Williamson* v. *Gore*, 73 S. W. Rep. 563.)

*William D. Tyndall* for respondent. On its face and by its terms this note was a New York contract. There was no notice to the plaintiff of either the coverture or the domicile of the indorser. The defendant is estopped from giving evidence that the note was dated, executed, delivered and negotiated in New Jersey when the paper itself shows that the date of execution and place of performance were in New York. (*Milliken* v. *Pratt*, 125 Mass. 374; *Grand* v. *Livingstone*, 4 App. Div. 589; *Thompson* v. *Taylor*, 66 N. J. L. 253; *Wright* v. *Remington*, 41 N. J. L. 48; L. 1898, ch. 336; *Jaycox* v. *Trembly*, 42 App. Div. 416; *Busch* v. *Klein*, 38 App. Div. 624.)

VANN, J. Each indorsement of a promissory note is a separate contract, standing apart from that made by the maker or any other indorser. (*Spies* v. *National City Bank*, 174 N. Y. 222, 225.) The validity of a contract of indorsement is ordinarily determined by the law of the place where the indorsement is made. (*Union National Bank* v. *Chapman*, 169 N. Y. 538, 543.)

As the note in question was indorsed by the defendant in the state of New Jersey where she resided, under ordinary circumstances she would not be liable thereon, because the laws of that state do not permit a married woman to become a simple accommodation indorser. The laws of the state of New York, however, authorize a married woman to contract, even with her husband, the same as if she were unmarried, and it is insisted that the defendant is estopped from denying that her indorsement is a New York contract, inasmuch as the plaintiff, in good faith, purchased the note for value, before maturity, without notice of any thing to put it on inquiry and in reliance upon the fact that it was dated and made pay-

able in the state of New York, with nothing on the face of either the note or the indorsement to suggest that the contract was made in the state of New Jersey. We think this position is sound. Whoever conceals facts required by good faith and fair dealing to be disclosed, acts inequitably and will not be permitted to assert those facts to the injury of one misled by such conduct. The defendant could not make her coverture a trap to catch innocent persons. She could not deliberately give the appearance of validity to her contract and then as against a *bona fide* holder plead that it was invalid. She knew that the note was dated and payable in New York, and that the presumption from those facts was that it was indorsed there. She also knew that if she delivered the note in this condition to her husband to enable him to negotiate it, any one who acted on such presumption, as he lawfully might in the absence of notice, would be injured if she should plead her coverture and that she actually indorsed it in New Jersey. It was, therefore, her duty, if she wished to act honestly toward others, to attach some notice to her indorsement, or give notice in some other way, so that innocent third parties might not be harmed by relying upon appearances which she had aided in creating. If she had written after her name, " Oak Tree, New Jersey," her place of residence, the plaintiff would have been put upon inquiry as to the validity of such a contract made in that state. With no attempt to give notice, by her indorsement in blank she gave currency to the note as one made and indorsed in New York. Pleading her indorsement as a New Jersey contract under these circumstances would be an attempt to take advantage of her own wrong, which the law will not permit.

The business of the country is done so largely by means of commercial paper that the interests of commerce require that a promissory note, fair on its face, should be as negotiable as a government bond. Every restriction upon the circulation of negotiable paper is an injury to the state, for it tends to derange trade and hinder the transaction of business. Commercial necessity requires that only slight evidence should be

insisted upon to establish an estoppel *in pais* as to the validity of commercial paper. The only practicable rule is to make the face of the paper itself, when free from suspicion, sufficient evidence, in the absence of notice, against all who aided to put it into circulation in that condition, unless the note is void by the positive command of a statute, such as the act against usury. No other rule would work well, for it would be intolerable if every bank had to learn the true history of each piece of paper presented for discount before it could act in safety. It is better that there should be an occasional instance of hardship than to have doubt and distrust hamper a common method of making commercial exchanges.

While it was unnecessary that the defendant should describe herself as a guarantor by adding the word "surety" to her signature, for possession by her husband, who was prior in order of liability to herself, was notice that she did not indorse in the ordinary course of business, still if she regarded her indorsement as a New Jersey contract she should have given notice of that fact in some way so that a purchaser in good faith might know that it was not what it appeared to be, a New York contract. (*Smith* v. *Weston*, 159 N. Y. 194; *Bank of Monongahela Valley* v. *Weston*, 159 N. Y. 201.) Even in the state of New Jersey, where the common-law disabilities of married women have not been wholly removed, her indorsement would be enforced as a New York contract. (*Thompson* v. *Taylor*, 66 N. J. L. 253.)

Independently of the statute which will be cited presently, the argument in favor of an equitable estoppel rests mainly on the presumption that a note dated and payable in New York was made and indorsed in that state. While this question has seldom been before the courts, Mr. Daniel in his useful work on Negotiable Instruments says it is the law and the authorities support the assertion. (Daniel on Neg. Inst. [5th ed.] § 728; *Maxwell* v. *Vansant*, 46 Ill. 58; *Towne* v. *Rice*, 122 Mass. 67; *Belford* v. *Bangs*, 15 Ill. App. 76; *Lennig* v. *Ralston*, 23 Penn. St. 137; *Snaith* v. *Mingay*, 1 M. & S. 87; Edwards on Bills, etc., § 378; Tiedeman on Bills

& Notes, § 91.)   Even if the question were entirely new, sound reasoning would lead to that conclusion.   While the contract made by an indorser is independent of that made by the maker in the sense that it is of a different nature, and can be separately enforced, still it is dependent on the promise of the maker, because it is an agreement to perform his promise, upon certain conditions, if he does not.   Therefore, the place where the maker promised, as stated in the note itself, must with all the other provisions thereof be read into the promise of the indorser, and it thus becomes by fair presumption, in the absence of notice to the contrary, the place where the indorser promised also.   The purchaser has no other guide as to a fact which may involve the validity of the contract, and hence it is a commercial necessity that both contracts, so closely connected that the second cannot exist without the first, should be presumed to have been made at the same place, unless the one with power so to do rebuts the presumption by timely notice.

The learned counsel for the defendant seems to recognize the existence of this presumption, as he says in his points that, " If we examine the note alone, then the negative inference might possibly arise that the defendant intended the note should be governed by the laws of another state."   He insists, however, that as the plaintiff stipulated the facts at the trial, it knew the defendant did not so intend.   The rights of the parties do not depend on what the plaintiff knew at the time of the trial, but on what it knew when it discounted the note, and at that time, owing to the absence of notice, which was the defendant's fault, it had no information but what the note gave.   The defendant knew that her husband could use the note in any state, and the place of date and payment indicated the state where he expected to use it.   Unless she intended that it should be used in a state where her indorsement would bind her, she must have intended to defraud and hence is estopped.

But, to clinch the argument, we have only to refer to the Negotiable Instruments Law, which provides that : " Except

where the contrary appears, every indorsement is presumed *prima facie* to have been made at the place where the instrument is dated." (L. 1897, ch. 612, § 76.) This statute was prepared for uniform action in all the states, and it has already been adopted in many. It is regarded as simply declaratory of the common law upon the subject under consideration. (Eaton & Gilbert on Commercial Paper, § 66.) Therefore, when the note was presented for discount in New York the plaintiff had the right under the statute to presume that it was indorsed in the state where it was dated, because nothing appeared to the contrary. The defendant, by her indorsement, aided in the negotiation of a note carrying with it that presumption, both at common law and according to the statute, and after the plaintiff had acted on the presumption she cannot be heard when she attempts to say that she indorsed in a state where her indorsement is not binding, and that she did not intend to be bound by her promise when she made it.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, BARTLETT, HAIGHT and WERNER, JJ., concur; O'BRIEN, J., absent.

Judgment affirmed.