## MAYOR v. BREEDING et al. (No. 8282.)

Court of Civil Appeals of Texas. San Antonio.
Dec. 11, 1929.

Rehearing Denied Feb. 5, 1930.

Newton & Woods, of San Antonio, for appellant.

D. A. Meyer and Don A. Bliss, both of San Antonio, for appellees.

SMITH, J. Robert Henderson Cook and Emma Washington, both then domiciled in the state of Pennsylvania, were married in that state on May 13, 1919. Six months afterwards, on November 11, 1919, Robert purchased a tract of land, with a dwelling house thereon, in Bexar county, Tex., paying $3,250 in cash therefor, and taking conveyance thereof in his own name.

In 1922 the Cooks encountered marital difficulties, and, on August 1 of that year, Emma, the wife, instituted divorce proceedings in a Pennsylvania court against her husband. Three weeks later, apparently as a result of their domestic controversy, both joined in a conveyance of an undivided one-half interest in the Texas property to the wife; it being recited in the deed that "it being the true intent and meaning of this conveyance to place said piece or parcel of

land jointly in the names of Robert Cook and Emma Cook, husband and wife."

The evidence is undisputed, except by possible inference, that the couple were afterwards reconciled to a continuation of their conjugal relations, and it is true that the divorce action was never prosecuted, although it remained on the docket for three years and was still pending at the time of the husband's death, which occurred in July, 1925. Otherwise the record is silent as to the actual relations of the couple during those three years, except that a few months before his death Robert, afflicted with tuberculosis, left Pennsylvania and lived the remaining six months of his life on the Texas property, as his homestead, while his wife remained in Pennsylvania. Robert died without issue, but was survived by his said wife and one brother and five sisters. There is no evidence that he left a will, from which it will be presumed that he died intestate. Upon the death of Robert, Emma came to Texas, attended her deceased husband's funeral, and shortly afterwards sold and conveyed the whole of said property to E. A. Mayor, Sr., of Bexar county, for a cash consideration of $1,800, and Mayor went into possession.

On March 18, 1926, Malisha Breeding, one of the surviving sisters of the decedent, and claiming to be the administratrix, with will annexed, of the estate of Robert Cook, deceased, brought this suit, in her alleged representative capacity, in the form of trespass to try title to recover from Mayor the title and possession of an undivided one-half interest in said property, and for rents and damages. Thereafter the surviving brother and sisters of said Robert Cook, deceased, including the said Malisha Breeding, intervened in the suit, claiming, as the alleged sole heirs at law of said Cook, to be the owners of an undivided one-half interest in said property, which they sought to recover, with rents and damages, as in trespass to try title. To these several pleadings Mayor answered by general demurrer, general denial, and by plea of not guilty.

Upon the trial, Malisha Breeding, as administratrix, and individually as a sister of the deceased, together with her brother and four sisters, recovered judgment for an undivided one-fourth interest in the property in controversy and for partition. Mayor has appealed.

The judgment adjudicating the alleged administratrix and the interveners to be the owners of one-fourth of the property was based upon the theory that at the time of Robert Cook's death an undivided one-half interest in said property belonged to his separate estate and one-half to the separate estate of his wife, and that, under the laws of Texas, his widow inherited one-half of his separate interest, and his brother and sisters the remaining one-half, and that therefore the latter interest, being one-fourth of the whole, did not pass by the widow's attempted conveyance of the whole to Mayor.

Obviously, if the assumption of fact that the property thus divided belonged to the separate estate of the decedent is correct, then the theory is sound. But this assumption of fact is evolved out of jury findings, first, that "all of the money which was paid by Robert Cook as a consideration for the purchase of the land in controversy arose from gains acquired by said Robert Cook before his marriage to Emma Cook"; and, second, that Cook acquired all of said "money or the gains represented by said money" while he was domiciled in the state of Pennsylvania.

The findings that "all of the money" paid by Cook for the property "arose from money or gains represented by said money" acquired by him before his marriage, and while he was domiciled in the state of Pennsylvania, appear upon their surface to be somewhat obscure in meaning. But this meaning is perhaps clarified by the evidence when considered in connection with appellees' theory of the law, as adopted and applied by the trial court. That theory is that under the Pennsylvania law there is no such estate as community estate, and all the earnings of the community, as we know it in Texas, became the separate property of the husband; that by this process the consideration paid by Cook for the property involved came out of the separate estate of the husband, and the property thus acquired in Texas took the same status, becoming the separate property of Robert Cook, to the exclusion of his wife. With this theory in mind, it is appropriate to observe that, even though it may be inferable from the record that Robert Cook acquired some of this estate prior to his marriage to Emma, there is equal support for the inference that a portion of the funds paid for the property involved was earned by the joint efforts and labor of both husband and wife, during coverture. It may be well assumed, then, that the word "gains," as used in the jury findings, included such joint earnings. It is further shown by the record that the property involved was purchased by Cook during coverture, and that he took conveyance without qualification of the nature of the estate thus acquired.

The evidence upon the material phases of the case is meager and unsatisfactory; so much so, in fact, as to render doubtful its stability as the foundation of a judgment. No more may be safely assumed from that evidence, resolved in support of the jury findings and judgment, than that Robert Henderson Cook was born in San Antonio and kept his domicile there until he reached the age of approximately 20 years; that at that age, about 1916, he enlisted in the Unit-

ed States Army and served in the American expedition into Mexico in pursuit of Pancho Villa; that during or following that service he drifted north, and finally at some undisclosed date settled in Connellsville, in the state of Pennsylvania; that at an undisclosed period of the American participation in the World War he was drafted back into the army, and at a date not disclosed was discharged; that he married Emma Washington at Connellsville on May 13, 1919, and the two lived together there as husband and wife until after they purchased and paid for the property involved, and until Emma instituted suit for divorce on August 1, 1922.

There is evidence that at some uncertain date Robert was granted a pension by the government, but the amount of the pension, when it began, how long it continued, are left wholly to conjecture. There is no direct evidence that Robert had acquired any property or accumulated any money at the time he married Emma, and, even though it may be inferred, from the circumstances that this property was bought and paid for a few months after the marriage, that at that time he owned property, or possessed money, the extent of such holdings is purely conjectural. It is in evidence that, through the joint efforts and labors of both husband and wife, they operated "rooming houses" in Connellsville from the time they were married, and also that they were operating a confectionery establishment in the year 1924, but that was five years after they purchased the property involved, and therefore too late to affect the character of the estate of the respective parties in said property. Summarizing the foregoing statement, there is no evidence showing the period during which the money paid by Robert Cook for the property was earned, or the source of those funds, or how much, if any, of it was derived from the separate property or earnings of either, or the joint earnings, if any, of both. We therefore hold that there was no evidence to support the jury finding that "all of the money which was paid by Robert Cook as a consideration for the purchase of the land in controversy, arose from gains acquired by Robert Cook before his marriage to Emma Cook." A finding to that effect upon such issue, for the purpose of overturning the presumption existing in this state in favor of the community estate, ought to be supported by evidence more direct and positive than mere inferences from remote circumstances, such as those relied upon in this case, for "the presumption that property purchased during the marriage is community property is very cogent; and can only be repelled by clear and conclusive proof, that it was with the individual money or property of one of the partners." Chapman v. Allen, 15 Tex. 278. Accordingly we

sustain appellant's seventh proposition of law and twenty-eighth assignment of error, in which that finding is challenged.

By this conclusion appellees are relegated to the protection alone of the provisions of the laws of Pennsylvania, that the earnings and acquisitions of the husband and wife during coverture, and while domiciled in that state, became the separate property of the husband. With reference to this contention of appellees, the jury found Robert Cook was domiciled in the state of Pennsylvania "at the time he acquired all the money or the gains represented by said money which was paid as a consideration for the purchase of the land in controversy." As this finding is not questioned by appellant through assignment of error, it must stand. It is not contended that the property involved was acquired by the use of the separate property or earnings of Emma Cook, and it was proved upon the trial that property accumulated by the wife or by the partnership became the separate property of the husband, by virtue of the laws of Pennsylvania, the state of the partnership domicile. By reason of the marital domicile there, and of the consequent application of those laws, the funds invested in the Texas property belonged to the separate estate of Robert Cook.

It seems to be well settled by the authorities that, when a person domiciled in another state invests his separate funds in property in this state, the property so acquired becomes likewise his separate property, even though under the laws of this state those funds, if acquired here under the circumstances of their acquisition there, would be classed as community property. Oliver v. Robertson, 41 Tex. 422; Rose v. Houston, 11 Tex. 324, 62 Am. Dec. 478; Blethen v. Bonner, 30 Tex. Civ. App. 585, 71 S. W. 290 (writ of error refused). For, to maintain its character of separate estate it is not necessary that the property of either husband or wife should be preserved in specie or kind; it may undergo mutations and changes, and still remain separate property, and, so long as it can be clearly and indisputably traced and identified, its distinctive character will remain. Love v. Robertson, 7 Tex. 6, 56 Am. Dec. 41; Rose v. Houston, supra. So, under the rights of the marital partners, as determined by the laws of Pennsylvania, an undivided interest in the property involved was the separate property of Robert Cook at the time of his decease intestate and without issue, and under our laws that interest descended one-half to his surviving wife and the remaining half to his brother and sisters.

But, under the laws of this state, the prima facie legal title to the entire property passed to the surviving wife, for reasons now to be noticed. It is provided in article 4619, R. S. 1925, that "all the effects which the

husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved." This statute, in substance, has been in force in this state since 1840, and the presumption thus erected attached to the property involved at the time the marital relation between the Cooks was dissolved by the death of the husband, even though their matrimonial domicile was still in Pennsylvania at the time of that dissolution.

 Under that presumption, and until it was overcome by "satisfactory" proof, the power to convey the property rested in the surviving wife. Consequently, her conveyance was absolute and effectually passed title to the whole property to appellant, unless it be shown and judicially determined upon the trial that the deceased husband possessed a separate interest in the property, and that appellant had actual notice of that separate interest, or was in possession of such facts as would put a reasonably prudent person upon inquiry, which, if reasonably pursued, would lead to the discovery of such interest.

 And since the claim of separate interest rested ultimately upon a rule of law peculiar to the state of Pennsylvania, and out of harmony with the laws of this state, appellant was not charged with knowledge thereof, or required to inquire into its existence or its effect upon his title, even though he knew the Cooks' marital domicile was in Pennsylvania. Marshburn v. Stewart, 113 Tex. 507, 254 S. W. 942, 943, 260 S. W. 565.

Appellant purchased the property and paid for it in view of the laws of this state. He knew of the marital status of the Cooks; that they acquired the property during coverture, were possessed of it at the time of the husband's decease, intestate and without issue; and that, under the provisions of article 4619, the property was presumed to belong to the community; that presumptively the title to the whole passed to the widow, as the surviving wife of her husband, who died intestate and without issue. Under the laws of this state, the title he purchased from the widow could be defeated only by the fact, first, that the funds paid by Cook as consideration for the land were from his separate estate as determined by the laws of Texas, which fact was not established upon the trial; or, second, by the fact that within his actual knowledge the property belonged to the separate estate of the deceased husband by virtue of the peculiar laws of another state, in contravention of those of this state. This latter fact was not adjudicated upon the trial of this case, and, as the burden of proof thereof rested upon appellees as a condition of recovery, they were not entitled to recover until they met that burden and

obtained a jury finding thereon, which was not done. Adjudication of this fact was as important, as essential, as adjudication of the fact of residence, for, although the effect of the Pennsylvania law, when proven, and its application to the case-made, were for the court to determine, the question of appellant's knowledge of that law and its effect as contravening the laws of Texas, was one of fact to be determined and affirmatively found by the jury. It was an ultimate and controlling fact, which will not be resolved by presumption in support of the judgment, as would evidentiary facts merely incidental to ultimate issues. It constituted an independent, and, as it proved to be, the sole, ground upon which appellees could have recovered. The burden of eliciting a finding thereon was upon appellees, who, in the absence of such finding or a request therefor, will be held to have abandoned that ground of recovery. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. Therefore, in the absence of such finding, the court erred in rendering judgment in favor of appellees for the land, and, the error being apparent upon the face of the record, and going to the very foundation of the case, it is obviously fundamental, and must be noticed, although not specifically urged by appellant. The judgment must be accordingly reversed.

We quote from the well-considered opinion in the case of Marshburn v. Stewart, supra:

"The land involved in this suit was acquired by purchase during the existence of the marriage between Cyrus S. Aiken and Mildred Aiken. There is nothing in the face of the deed to show that the consideration paid therefor was the separate property of Cyrus Aiken. There is nothing in the face of the deed to show that he was a citizen of Alabama at the time. Cyrus S. Aiken died before his wife. Since he never had any children, under our law she was the sole heir of all his interest in their common property. The legal title to all common property in his name in this state passed by inheritance to her at his death. 2 Gammel's Laws, p. 178, § 4. She, and after her death her heirs, apparently had a good legal fee-simple title to said land. Marshburn acquired the interest therein asserted by him by conveyances from such heirs. He paid a valuable consideration therefor, the sufficiency of which is not questioned in this case. * * *

"We think the burden of proof in this case is controlled by the provisions of our statute which made the land involved herein apparently the common property of Aiken and his wife. In a contest between them in their lifetime he would have had to establish any claim to the contrary by proof. After his death, before the heirs of his separate estate could have recovered such land from her they would have had the burden of estab-

lishing their claim thereto in like manner. Such burden rests on defendants in error in this case, regardless of whether Marshburn paid value for the land. While in this case the apparent title and the real title are both legal titles, we do not think, in view of the legal presumption of the sufficiency of the apparent title and the burden of proof imposed by our law on the holder of the real title to prove its superiority, that it should be given greater weight in determining the burden of proof on the question of notice than is given to an outstanding equitable title when asserted against a legal title. The law having invested Mrs. Aiken, as survivor of the community, with the apparent legal title in fee simple to this land, and such apparent title having passed to Marshburn for an adequate and valuable consideration, we think before defendants in error can defeat the same they must further show that at the time he purchased he had notice of their rights, or that he had notice of facts sufficient to put him upon inquiry, and that such inquiry, pursued with reasonable diligence, would have necessarily discovered the real facts upon which their claim to the land involved in this suit is predicated. No other rule as to the burden of proof in such cases would, in our opinion, be in harmony with the provisions of our statutes, and consistent with the decisions of our Supreme Court. Sanborn v. Schuler, 86 Tex. 116, 23 S. W. 641; Cooke v. Bremond, 27 Tex. 457, 459, 86 Am. Dec. 626; Baldwin v. Root, 90 Tex. 546, 551, 552, 40 S. W. 3; Patty v. Middleton, 82 Tex. 586, 589, et seq., 17 S. W. 909."

Much is said by the parties concerning the deed, executed by Robert and Emma Cook during coverture, conveying to Emma Cook an undivided one-half interest in the whole tract embracing the land involved, and containing the concluding recitation that "it being the true intent and meaning of this conveyance to place said piece or parcel of land jointly in the names of Robert Cook and Emma Cook, husband and wife." It is not apparent that this conveyance has any material bearing upon the disposition of the appeal. It does not express any purpose to separate the respective estates of the husband and wife in the property, or to give it the status of separate property as to either spouse, and, although upon its face it may have the legal effect under the laws of this state, by which it must be construed, to allocate an undivided one-half of the property to the separate estate of the wife (Story v. Marshall, 24 Tex. 306, 76 Am. Dec. 106), it does not so operate in favor of the husband as to the remaining one-half. It does not purport to be a part, or result, of any separation agreement; rather it emphasizes the continued existence of the marital relation by express affirmation of that relation, which did in fact continue until the husband's death. It does not purport to divest the wife of her presumed community estate in the property, and cannot be given that effect under the laws of this state, which provide other means than those employed by which the wife may convey to the husband. Kellett v. Trice, 95 Tex. 160, 66 S. W. 51. If it may be given any significance in this case, it is to emphasize, rather than negative, the presumed community character of the estate in the whole property, since the wife's joinder in the conveyance raises an inference that she had some sort of estate in the property thereby sought to be conveyed. In any event, the property rested under the presumption, under the laws of Texas, that it belonged to the community estate at the time of this conveyance, and what has been said with reference to notice of the peculiar effect of the laws of Pennsylvania applies with equal force in construing the effect of said conveyance. It is appropriate to add that it was recited in this conveyance that Cook and wife were both residents of Bexar county, Tex., at the time of the conveyance.

Appellant contends that as a condition to recovery appellees were obliged to specially plead the laws of Pennsylvania upon which they sought to circumvent the laws of Texas establishing and enforcing the elements of community property. Undoubtedly such special pleading is requisite as a general rule, perhaps in every character of action, unless an exception exists in actions in trespass to try title. Authorities upon the point are meager, and confused, if not in actual conflict. Burch v. McMillan (Tex. Civ. App.) 15 S.W.(2d) 86 (writ not acted upon, if applied for); Burnham v. McMichael, 6 Tex. Civ. App. 496, 26 S. W. 887 (writ refused); Herndon v. Vick, 18 Tex. Civ. App. 583, 45 S. W. 852 (writ dismissed). However, in view of reversal upon other grounds, the question will probably not occur upon another trial, and need not be decided here.

Reversed and remanded.

(The original opinion will be withdrawn, and the foregoing substituted therefor.)