KING v. BRUCE et ux.

No. 14790.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 15, 1946.

Rehearing Denied Dec. 6, 1946.

Cantey, Hanger, McMahon, McKnight & Johnson, and R. K. Hanger, all of Fort Worth, for appellant.

Homer L. Bruce and Clara C. Bruce, pro se.

Homer L. Bruce, of Houston, for other appellees.

SPEER, Justice.

J. P. King, Jr., instituted this suit in a District Court of Tarrant County, by procuring the issuance of a writ of garnishment against First National Bank of Fort Worth, Texas, based upon a judgment held by him against Homer L. Bruce for approximately $2,700.

Because of an adverse judgment entered against him, King has appealed and will be referred to by us as appellant. In response to an interpleader of the garnishee First National Bank of Fort Worth, Homer L. Bruce and his wife Clara C. Bruce appeared and made answer, and will be referred to by us as appellees except when necessary to mention them individually.

In the interest of clarity it becomes necessary for us to give a somewhat extended statement of the nature of this controversy. We shall take our statement largely from those made by appellant and appellees in their respective briefs.

Appellant obtained a judgment in a district court of Tarrant county against appellee Homer L. Bruce, for $2,701.20, on March 19, 1946.

On March 20, 1946, appellant procured the issuance of a writ of garnishment against garnishee, based on his judgment. Garnishee answered in the customary way, to the effect that it did not have any funds or effects in its hands belonging to Homer L. Bruce, but that there was an account with it for $2,900. in the name of Clara C. Bruce, wife of Homer L. Bruce, and that it did not know whether said fund was the separate property of Clara C. Bruce or community property of her and her husband, Homer L. Bruce; it interpleaded appellant and both appellees and prayed that the court adjudicate the rights of appellant and appellees.

Appellees appeared and, by a nine page answer, pleaded and attached thereto a contract entered into between them on March 12, 1946, in the City of New York. That at all times material to this controversy, they were husband and wife, domiciled in Texas, and had adult children also domiciled in Texas. That the $2,900 on deposit in garnishee bank was at all times since its deposit therein on March 14, 1946, the separate property of appellee Clara C. Bruce. That prior to the execution and performance of the contract mentioned, they had on deposit in a Texas Bank $5,800 community funds; that at the time of the execution of the contract in New York, in the presence of his wife and with her consent, Homer L. Bruce drew a check on the Texas bank for $5,800 and opened an account for that amount in a New York Banking institution. He then drew his check on that account for $4,000 and requested that it be paid in 4,000 silver dollars to be placed by the bank in two containers, labeled "Container No. 1" and "Container No. 2" respectively. He then drew his check No. 2, against said account for $1,000, and the New York Bank gave him in return therefor two of its cashier's checks, each for $500, payable jointly to appellees. At the same time and place appellee Homer L. Bruce drew on said bank his two checks Nos. 3 and 4, for $400 each payable to appellees jointly. Appellees then and there endorsed one each of said two cashier's checks, and Homer L. Bruce's checks Nos. 3 and 4, to the respective appellees. They further alleged that at the same time and place they entered into a written contract between themselves while the two containers above mentioned and the checks above set out were physically present, and under the terms of the contract, "Container No. 1", with its 2,000 silver dollars and one of the cashier's checks for $500 and Homer L. Bruce's check for $400, were delivered to and received by Clara C. Bruce; and the other "Container No. 2" and the other cashier's check and one of Homer L. Bruce's checks were delivered to and received by Homer L. Bruce. That immediately after the execution of the contract and the receipt of the items above mentioned, they each deposited in the New York bank in her and his own names respectively said amounts aggregating to each $2,900. In return for each of said deposits, the New York Bank issued to each of the appellees its cashier's check for $2,900. That thereafter, on March 14, 1946, appellee Clara C. Bruce opened an account with the garnishee bank by depositing therein the New York Bank's check for $2,900. The provisions and conditions of the contract between appellees, executed and performed in New York, were fully pleaded and claimed to control the acts of appellees, so as to constitute the $2,900 in the garnishee bank at the time the writ of garnishment was served the separate property of appellee Clara C. Bruce. They prayed that appellant take nothing by his garnishment proceedings and that the funds be declared the separate property of Clara C. Bruce.

Appellant, by supplemental petition, admitted the truth of appellee's answer relating to the original $5,800 being community property, that appellees executed the contract between themselves in New York, each delivered to the other the respective sums of money and checks pleaded by them, and that the contract contained provisions to the effect that each of appellees was acquainted with the laws of New York and that they expressly declared in the contract that the laws of New York should apply to their acts in consummating same. But expressly denied the applicability of the New

York laws to said contract and alleged that the laws of Texas govern and control the same. He further denied that Clara C. Bruce obtained and acquired said $2,900 as her separate property thereunder. Further, that if the contract had been made in Texas the title to said funds would not have passed from the community estate of appellees to the separate estate of said Clara C. Bruce. He again prayed for judgment against the garnishee bank and appellees for recovery of said $2,900 as the community property of appellees.

The contract between appellees made in New York and specially pleaded by them consists of four single-spaced typewritten pages, and the many paragraphs therein are unnumbered. It is well to note some of its provisions and in doing so we must designate by numbers some matters necessary to point out. The pertinent parts are as follows:

1. Homer L. Bruce was designated First party and his wife Clara C. Bruce as Second party.

2. The contract was executed between the appellees in the City of New York. The containers of two thousand dollars each and the cashier's checks of the New York Bank and the checks of First party were all physically present when the contract was entered into.

3. It recites the fact that the parties previously had on deposit in a Texas bank $5,800 of community funds; that First party transferred that fund to the New York Bank and there opened an account in his own name. It gives in detail the manner in which Homer L. Bruce, by his check withdrew $4,000 and how it was paid in 4,000 silver dollars in two containers, and the issuance by the bank of its cashier's checks and the two checks made by said Homer L. Bruce, and the endorsements thereon, all as pleaded by appellees.

4. That the parties desired by said contract that the respective amounts of $2,900 each should thereafter become the separate property of each.

5. "The parties hereto do not desire to accomplish this through mutual gifts but desire and intend to accomplish it by contract and transfer between themselves in consideration of the mutual agreements herein contained."

6. "Second party (the wife) particularly desires to accomplish the foregoing so that she will own said property as her own separate property instead of continuing to own a one-half interest therein as community property with First party, on account of the many benefits that will accrue to her as a result of this contract among, which are the following." In our abbreviated form they were: (a) The husband will no longer have the management and control of the wife's interest in said property but she will thereafter have such management and control. (b) Her property thus acquired will no longer be subject to the husband's debts. And (c) If all said $5,800 remains community property and the husband should die the whole of it would pass into the hands of the husband's administrator or executor and there remain until administration is complete and she would derive no revenue therefrom during the administration period. Whereas if her portion is her separate property it would not so pass to the administrator and she would retain it for her own use and benefit during the time administration was pending.

7. It recites that the contract was wholly executed and performed in New York and that the parties intended, by so performing it, that the laws of said State of New York, the common law, the statutory provisions, and the decisions construing same as announced by the courts, all of which were known to the parties, should apply, govern and control the validity and effect of the contract and the title to the properties acquired by each thereunder.

8. In several separate paragraphs it is stated that in consideration of the former recitals therein, each of the parties "bargains, sells, transfers and assigns" to the other the respective containers of 2,000 silver dollars, the New York Bank's cashier's check and one of those of Homer L. Bruce to become his or her separate property. The contract bears date of March 12, 1946.

As we construe the issues made by the pleadings, they were (1) Did the laws of New York, and not those of Texas, apply

and control the validity and effect of the contract made between the appellees? (2) Did the original $5,800 community property of appellees continue to remain community property between appellees irrespective of their contract, and (3) If the contract (omitting the references to New York and its laws) had been made in Texas, would the $2,900. in controversy have become the separate property of appellee Clara C. Bruce?

Trial was to the court without a jury. As above indicated judgment was adverse to appellant, plaintiff in garnishment; hence this appeal.

There is no statement of facts, nor is there any controversy between the parties as to the facts—only questions of law are involved.

There was a motion made by appellees in the trial court under 184a, Texas Rules of Civil Procedure, for the court to take judicial knowledge of the laws of the State of New York; appellant waived further notice on the motion and consented that it be granted; trial court's action was in accord with the motion. In addition there are stipulations in the record that the trial court and all subsequent appellate courts, in case of appeal, should do likewise; the stipulation went further and provided for the identical contents of Sections 50, 51, and 56, of Article 4, of Chapter 14, of the Consolidated Laws of New York, and further, that the language of the above mentioned laws apply to the contract between appellees, dated March 12, 1946, to the same extent as if·they were citizens of and domiciled in the State of New York. That under the provisions of said enumerated laws the contract between appellees was in all respects valid. In the same paragraph appellant reserved the right to contend that the laws of Texas and not those of New York applied to appellees and their contract. The parties further stipulated as to the effect many enumerated decisions by the courts of New York would have upon the parties and contract, and that notwithstanding the decisions named either party had the right to bring to the attention of any court in which the cause may be pending, additional authorities.

Trial court upon request filed findings of fact and conclusions of law. He found all facts to be as pleaded by appellees, including the laws of New York as stipulated by the parties; he found that there were advantages inuring to appellee Clara C. Bruce under the contract between her and her husband, in the identical language found in the contract, and concluded as a matter of law that the laws of New York applied to the transaction, and that under those laws the contract was valid and constituted the $2,900, taken by the wife under that contract; her separate property when the writ of garnishment was served, and further concluded that if the contract had been made in Texas it would have had the same effect.

It will be borne in mind that there is no contention by appellant that any of the acts of appellees involved in this case amounted to a fraud upon him as creditor of Homer L. Bruce.

■ Appellant's first point of error reads: "The contract (made in New York) between defendants (appellees) was invalid under the laws of New York."

In support of this point he cites Lamb v. Hardy, 109 Tex. 414, 211 S.W. 445. The cited case involved the sufficiency of the evidence to discharge the burden of proof cast upon a party to establish the law of another state when he is dependent upon the laws of that state to support his cause of action. It was held that the burden was not discharged. Appellant contends here that appellees did not discharge the burden of proof to establish that the laws of New York authorized them to enter into the contract. The point must be overruled for the reason that the trial court, in response to a motion under Rule 184a, took judicial notice of those laws and, more than that, appellant stipulated with appellees what those laws were, in what purports to be the precise language of the statutes, codes and decisions of that state pertaining to such contracts.

We have compared the stipulated provisions with the statutory "Consolidated Laws of New York" and find them correct. By Sections 50, 51, and 56, of Chapter 14, Consolidated Laws of New York, as applicable to "Domestic Relations", a wife may own

real or personal property in her own right and manage and control the same as though she were unmarried. She has all the rights in respect to property, and may make contracts in respect thereto, with any person, including her husband, the same as if she were unmarried. The husband and wife may convey or transfer real or personal property directly, the one to the other, without the intervention of a third-person. And property acquired by a married woman, as prescribed under those mentioned sections, continues to remain her separate property the same as if she were unmarried. The application and effect of these "Consolidated Laws" of the State of New York have thus been announced in Winter v. Winter, 191 N.Y. 462, 84 N.E. 382, 16 L.R.A.,N.S., 710; Chemical National Bank of New York v. Kellogg, 183 N.Y. 92, 75 N.E. 1103, 2 L.R.A.,N.S., 299, 111 Am.St.Rep. 717, 5 Ann.Cas. 158; Goldstein v. Goldstein, 35 Misc. 251, 71 N.Y.S. 807; Dower v. Dower, 36 Misc. 559, 73 N.Y.S. 1080; and other such cases, cited by appellees in their briefs.

Appellant's points of error 2 and 3 will be discussed later in this opinion, and we pass to Point No. 4. This point has given us much concern. It reads: "The Laws of the State of Texas applied to and governed the contract, the capacity of the defendants (appellees) to execute it, and the title acquired by each of them in the properties dealt with, and the $2900.00 (with garnishee) thereby transferred to defendant Clara C. Bruce remained the community property of defendants." It is our duty to meet the issue fairly and squarely and we shall endeavor to discharge that obligation.

At all times since Texas became a member of the Union, our courts have recognized what we are pleased to denominate Community property rights between married persons. Our first Constitution, adopted in 1845, provided in Section 19, Article VII: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property, as that held in common with her husband." Sect. 15, Article XVI, of our present Constitution, Vernon's Ann.St., is identically the same. It is clear that the quoted provision is not, in all respects, self-enacting.

In obedience to the Constitutional requirement, the Legislature promptly passed laws relating to both the husband's and wife's separate property as well also as to property held in common by the two. These Acts have been slightly amended from time to time.

As they now stand, Articles 4613 and 4614, R.C.S., Vernon's Ann.Civ.St. Arts. 4613, 4614, define, almost in the exact language of the Constitution, what shall constitute the separate property of each the husband and wife, with the additional provisions that each shall manage and control their respective separate properties but require the joinder of the husband in conveyances of the wife's separate real estate and transfers of her stocks and bonds.

Shortly after Texas joined the Union, the Legislature passed a law, "as to property held in common by the two" as required by the constitution. It then read: "All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, shall be deemed the common property of the husband and wife, and during the coverture may be disposed of by the husband only." (P.D. 4642).

The last mentioned Act remained the law until it was amended in 1913, and again in 1927 as it now stands so as to read in part: "All property acquired by either the husband or wife during marriage, *except that which is the separate property of either*, shall be deemed the common property of the husband and wife; * * *." Vernon's Ann.Civ.St. Art. 4619. (Emphasis ours.) The Act also provides for disposition of the common property by the husband only, and makes further provisions how the wife may do so under named conditions.

It is obvious that the Legislature had in mind that the former Act was not broad enough to cover a contingency by which either the husband or wife might acquire separate property other than by the means

to which the old Act was confined. We say this because before the amendments, our courts had held in Blethen v. Bonner, 30 Tex.Civ.App. 585, 71 S.W. 290, writ refused, that married persons residing in a state which had no community property law, could acquire separate property and when brought to Texas thereafter, it remained separate.

Adverting to the point under discussion of whether the law of Texas or that of New York applied to the contract made between appellees, we must determine whether or not appellee Clara C. Bruce acquired property in her separate right, as distinguished from common property under our statutes, in virtue of the contract made with her husband in New York.

▉ In construing the statutes above referred to, our courts have held that the word "acquired", as applied to property, contemplates the inception of *title* thereto. 23 Tex.Jur. 67, sect. 47, and Ibid. page 100, sect. 79, and footnotes of each. When appellees went to New York they owned jointly in common the $5,800 then in a Texas Bank; neither had title to that fund, but the connubial partnership created by law had the title. We have already observed that under the laws of New York the wife could, by contract or otherwise, acquire title in her separate right from her husband or any other person, and so if the laws of New York applied to appellees' transaction between themselves, the wife *acquired* title to the $2,900 from the quasi partnership under the contract. But if the effect and result of the contract was controlled by Texas laws it would stand upon the same footing as if it had been made in Texas, in which event it might have had an entirely different effect.

▉ The original $5,800 must be termed movable property. In Restatement of the Law, Conflict of Laws, these rules are laid down: "Section 290, Movables Acquired During Marriage—

"Interests of one spouse in movables acquired by the other during marriage are determined by the domicile of the parties when the movables are acquired."

"Section 291, Removal of Movables by Spouses to Another State."

"Interests of movables acquired by either or both of the spouses in one state continue after the movables have been brought into another state *until the interests are affected by some new dealings with the movables in the second state.*" (Emphasis ours.)

When we observe the two above announced principles, we are at once confronted with the inevitable fact that under the contract made in New York, to which state the property had been taken, the community interest of the estate and such interest as each had therein, were affected by a "new dealing" with respect thereto, in New York.

The New York contract relied upon by appellees is replete with statements to the effect that the parties were familiar with the laws of that state and that it was their intention that those laws alone should control the validity and effect of their every act.

▉ In 9 Tex.Jur. 360, sect. 9, under Conflict of Laws, the rule is laid down to the effect that disputes concerning validity, obligation and interpretations of contracts are to be determined according to the lex loci contractus; that if a contract is valid where made, it is valid everywhere. In the same text, page 362, sect. 10, it is said: "As a matter of fact, the law governing the contract is that which the parties had in mind, and with which they were familiar, at the time of the execution of the agreement."

In Lamb v. Hardy, 109 Tex. 414, 211 S. W. 445, it was held that the courts of Texas would decline to make questions of general commercial or common law exceptions to the general rule that they will determine and enforce substantive contract rights in accordance with the law of the place where the contract was made and was to be performed.

In 11 Amer.Jur. 372, this rule is announced: " * * * The general rule that the marital rights of the parties in personal property are governed by the law of their matrimonial domicile, rather than that of where the property is found, may be changed by statute so far as its applicabil-

ity in any particular state or country is concerned. "

In 12 C.J., p. 471, Conflict of Laws, § 66, Transfer Inter Vivos—we find: "The rule supported by the trend of modern authorities is that the validity of a transfer of personalty depends on the law of its actual situs. * * * The rule that the law of the situs governs, rests on the fundamental proposition that every country has the right to subject all property within its jurisdiction to the control and regulation of its laws." See also 15 C.J.S., Conflict of Laws, § 18, p. 929.

In this connection, Restatement of the Law, Conflict of Laws, lays down these rules: "Section 333, Capacity to Contract: The law of the place of contracting determines the capacity to enter into a contract." And by "Section 255, Capacity to Convey Chattels: Capacity to make a valid conveyance of an interest in a chattel is determined by the law of the state where the chattel is at the time of the conveyance."

It must be conceded that the $5,800 community property in Texas was a movable chattel belonging to the community estate of appellees. When moved to the State of New York by the parties, their community interests were affected by "some new dealings" in that state, evidenced by the contract between them, which contract obviously contemplated that it was to be governed and controlled by the laws of New York, the situs of the chattels at that time. We conclude that the effect and validity of the contract between appellees was and is governed by the laws of New York and not by those of Texas.

We hold that appellee Clara C. Bruce, in the state of New York, in virtue of the contract with her husband, acquired as her separate property, title to the $2,900 received by her at the time of the full performance of the contract; that having thus acquired the title it continued to remain her separate property after she brought it back to Texas and deposited it in the garnishee bank. We also believe that just such exceptions as this to the former statutory provisions which limited her separate property to that owned or claimed at marriage and that acquired by gift, devise or descent, prompted the Legislature to write into Article 4619, R.C.S., Vernon's Ann. Civ.St. Art. 4619, the italicised portion of that article quoted, supra.

Appellant's fifth point of error asserts that even if the contract in controversy was valid under the laws of New York, Texas courts will not enforce the rights of defendants (appellees) thereunder because it contravenes the public policy of this state. This point must be overruled for the reason the contract was executed and fully performed in New York. As held in Blethen v. Bonner, 30 Tex.Civ. App. 585, 71 S.W. 290, writ refused, this action does not involve the enforcement of the laws of another state, but only involves the ascertainment of the laws of that state and from them determine the extent of the title to property acquired under them. The courts of this state have no power to alter the status of property and titles thereto, fixed and vested by the laws of a sister state before being introduced into this state.

Appellant's points of error two and three are substantially, that if the contract between appellees here involved had been made in Texas it would have been void as violative of Section 15, Article XVI, of our State Constitution, and of Articles 4610, 4613, and 4614, R.C.S., Vernon's Ann.Civ.St. arts. 4610, 4613, 4614. The appellees assert by counter propositions a contrary view.

Since the contract involved in the instant suit was executed and fully performed in New York, the laws of which did not prohibit but expressly authorized it, it is somewhat difficult to perceive why its validity and effect if executed in Texas would be material. Yet because of the points of error that the laws of Texas applied, and appellant's earnest contentions thereunder, we shall not refrain from discussing them.

In the earlier part of this opinion we have set out the constitutional and statutory provisions embraced within these points of error except Article 4610, R.C.S. The substance of Article 4610 is

that persons intending to marry may enter into such stipulations as they may desire, provided they are not contrary to good morals or to some rule of law, or have for their purpose to renounce or attempt to alter the legal order of descent, relative to themselves or their respective children by any other person or their common children.

The language of the quoted statute, literally construed, would appear to be confined to antenuptial contracts, but our courts have held that it applies as well to postnuptial contracts. Johnson v. Durst, Tex.Civ.App., 115 S.W.2d 1000, writ dismissed. It cannot be said that married persons cannot make disposition of specified property during their lifetime nor by will at death, in such way that it would not go by the laws of descent and distribution. To adopt such rule would prevent all manner of sales and mutation through conveyances and by wills. The rights to sell, dispose of and convey property while persons are living and to pass title by wills are as well defined and recognized by our laws as are those pertaining to descent and distribution. We hold that the disposition of property of married persons by any means recognized by law does not violate the provisions of Article 4610, R.C.S.

From the reading of our constitutional provisions, and Arts. 4613, 4614 and 4619, above set out, it must be observed that as between married persons in this state their property may be divided into two classes, one of which is their respective separate properties and the other is common or known to us as "community" property. By arts. 4613 and 4614, R.C.S., Vernon's Ann.Civ.St. arts. 4613, 4614, each the husband and wife have the exclusive management and control of his or her separate property, except that the husband is required to join in a conveyance by the wife of her separate real estate and a transfer of her stocks and bonds. And by art. 4619, R.C.S., Vernon's Ann.Civ.St., the common or community property can be disposed of by the husband *only*.

Under the points of error now under consideration it is contended by appellant that if the identical contract made between the appellees in New York (stripped of all references to that state and its laws), had been made in Texas, it would have been violative of the constitution and of the articles of the statute which we have quoted. Appellant insists that for these reasons the $2,900 held by garnishee was at all times community property.

■ When contracts are made between husband and wife by which they attempt to divide or separate community property and make it the separate property of each, our courts have scrutinized them closely because our scheme and system is such that if there be a doubt as to the validity of such transactions it will be resolved in favor of the community. We have guarded with jealous care the community estate against infringments by the parties—the community status created by our laws in a large measure, has become our shibboleth.

■ Since the early case of Cox v. Miller, 54 Tex. 16, down to Bruce v. Permian Royalty Co. No. 2, Tex.Civ.App., 186 S.W.2d 686, writ refused want of merit, our courts have uniformly held that community property cannot be changed from that status to the separate property of each, by the mere agreement or volition of the parties. The settled rule seems to be that: "The separate property of either spouse may be conveyed to the other in such way as to become his or her separate property, and community property [of the wife] may be so conveyed by the husband to the wife as to make it hers separately. This is true, not because the parties choose to name the property separate, but because the facts transpire to bring it within the statutory definition; and the law, operating upon such facts, vests title in accordance with them. The act of the parties is such as the law defines as necessary to create the separate right." Kellett v. Trice, 95 Tex. 160, 66 S.W. 51, 53; McDonald v. Stevenson, Tex.Civ.App., 245 S.W. 777, writ refused: Speer's Marital Rights, 3d Ed., p. 415, sect. 341.

It appears from this record that appellees do not rely upon a "mere agreement" between themselves that the $5,800 community property shall thereafter be-

come the separate property, one half to each. Nor is it contended that there was a gift by each or either to the other of an interest in the community property. The contract relied upon by appellees, by its very language, negates any such idea. But by separate paragraphs in the contract referable to each of the parties, they each purport to "bargain, sell, transfer and assign" to each other all right, title and interest he or she has in and to the respective amounts of $2,900 when so divided at the time of the execution of the contract in New York.

Applying the principle above announced in the Bruce-Permian case, supra, it is said in 23 Tex.Jur. 156, Sect. 127: "This (control of the community property) seems to be a policy of the state, exemplified especially in the statute forbidding agreements between husband and wife which have the effect to alter the statutory regulation of the community. But in the matter of dealing with specific property belonging to the community, either may donate, mortgage or convey to the other his interest therein."

There are many cases to be found in which the right of either spouse is recognized to donate, sell or hypothecate either his or her separate property or the interest in community to the other. We have noted with interest that all such cases cited by the parties, as well as those found by us, invariably deal with conveyances of real estate belonging to one of the spouses or relate to gifts outright or by presumption of such gift, donation or sale by the husband, to the wife. We have no doubt that the separate real estate of the wife (by both joining in the conveyance) can be conveyed to a trustee and by him to the husband as his separate property, or to the community. That rule is not pertinent here because no real estate is involved.

We have seen no case construing the statutes to mean that the wife can bargain, sell or assign her community interest in personal property, such as was the $5,800 in money, either to her husband or to a trustee for his separate use and benefit. We have already observed that the husband has the exclusive management and control of the community property. For her to in any way dispose of it to her husband or any other person would be subversive to his exclusive management and control. It is quite obvious that if the contract now under consideration had been made in Texas, the wife, and not the husband, was attempting to exercise control and management of her community interest in the money; moreover, if the transaction involved could be said to be the husband's acts, he would be in the attitude of seller and buyer, or assignor and assignee, neither of which would be valid. It is unnecessary for us to speculate as to whether or not the attempted transaction could have been consummated in Texas between the parties in some other way than that attempted by them.

In addition to the authorities already cited on this phase of the instant case, we have carefully read the pertinent parts of Speer's Marital Rights, 3d Ed., the entire text of "Husband and Wife" in Vol. 23 Tex.Jur., (which compendium form perhaps was written by the author of Marital Rights, supra,) along with many decisions of our courts, including Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825; Kellett v. Trice, 95 Tex. 160, 66 S.W. 51; Sparks v. Taylor, 99 Tex. 411, 90 S.W. 485; 6 L.R.A.,N.S., 381; Michael v. Rabe, Tex.Civ.App., 109 S.W. 939; Emerson-Brantingham Imp. Co. v. Brothers, Tex.Civ.App., 194 S.W. 608; Givens v. Givens, Tex.Civ.App., 195 S.W. 877; McDonald v. Stevenson, Tex.Civ. App., 245 S.W. 777, writ refused, all of which go extensively into the subjects of property rights, authority and privileges of married persons, and we conclude that if the identical contract involved in this case had been made and performed in Texas, the $5,800 community property between appellees would not have been converted from community to the separate property of the husband and wife, in the proportions contended for by them in this case.

Finally it is our conclusion that the contract made by appellees in New York was valid and was controlled by the laws of that state and not by the laws of Texas; that Clara C. Bruce acquired ti-

tle to the $2,900 under the contract in New York as her separate property and that it was her separate property when deposited with garnishee bank and at the time the writ of garnishment was served. These holdings are in agreement with those of the trial court. As indicated herein, we are not in accord with the conclusion of law expressed by the trial court to the effect that if the contract had been executed and performed in Texas it would likewise have been valid. However the last conclusion by the trial court does not appear in the judgment entered, but the judgment is supported by other findings of fact and conclusions of law and will not be reversed for some other erroneous conclusion reached by the trial court. We therefore order that the judgment be and it is affirmed.