## McDONALD et al. v. STEVENSON et ux. (No. 818.)*

(Court of Civil Appeals of Texas. Beaumont. Nov. 12, 1922. Rehearing Denied Nov. 22, 1922.)

1. **Husband and wife ⬅➡247—Property classified according to facts surrounding acquisition.**

Under the rule that property is classified according to the facts surrounding its acquisition, property of the husband and wife gets its character, as belonging separately to one of them or in common to both, from the statutes defining their separate and community estates. Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621–4623.

2. **Husband and wife ⬅➡110—Separate property must have belonged to respective spouses at marriage, or afterward acquired by gift, devise, or descent.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4621, to be separate property it must have belonged to the respective spouses at the time of their marriage, or have been acquired afterward by gift, devise, or descent.

3. **Husband and wife ⬅➡266—Cannot by mere agreement, without separation, partition community property.**

While, where a husband and wife have actually separated, intending to remain so, an agreement entered into between them fairly and equitably dividing their community property will be upheld, still they cannot by mere agreement, without such separation, dissolve a quasi partnership which the law creates for them in reference to the property pending the marital relation.

4. **Husband and wife ⬅➡29(9)—Cannot enter into contract between themselves altering legal order of descent.**

While parties intending to enter the marriage state may enter into whatever marriage contracts they please, provided they are not against good morals or contrary to some fixed rule of law, they cannot, under Vernon's Sayles' Ann. Civ. St. 1914, art. 4617, enter into such contract as would alter the legal order of descent.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by Marie McDonald and others against J. R. Stevenson and wife. From a judgment for defendants, plaintiffs appeal. Affirmed.

W. J. Howard, of Houston, for appellants. Campbell, Myer & Freeman, of Houston, for appellees.

O'QUINN, J. Appellants sued appellees for partition of lots 7 and 8 in block 19, and lot 5 in block 76, in the Noble addition to the city of Houston, Tex., and lot 5 in block 25 in the Chapman Second addition to the city of Houston, alleging that they were the owners of a one-half interest in said

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused January 3, 1923.

property, and that appellees were the owners of the other half.

Appellees answered by general denial, plea of not guilty, and specially pleaded the three and five years' statutes of limitation. They also pleaded improvements in good faith. By cross-action, appellees, in the form of trespass to try title, sued for the entire premises.

Appellants, by supplemental petition, answered by plea of not guilty, and that they had all the while been tenants in common with appellees.

The case was tried before the court without a jury, resulting in a judgment in favor of appellees for all the premises, from which appellants appeal.

The court filed the following findings of fact:

### "Findings of Fact.

"(1) James McDonald and wife, Amelia McDonald, were for many years husband and wife, and continued to live together as such from the time of their marriage until the death of James McDonald, in the year 1905.

"(2) During the period of their marriage the said James McDonald and wife, Amelia McDonald, acquired all the property hereinafter referred to and described. All of said property was acquired under such circumstances that same became the community property of said James McDonald and Amelia McDonald.

"(3) James McDonald was drinking heavily and he and Mrs. Amelia McDonald decided to divide their community property. Accordingly, on or about October 25, 1900, they both signed and acknowledged (the acknowledgment of Mrs. McDonald being in the form and manner provided by statute for married women) an instrument in the form of a deed, conveying to J. Burgheim all of their community property, as follows:

" 'Lots 5 and 6 in block No. 76, in the Noble addition to the city of Houston, Harris county, Tex.; also lots Nos. 7 and 8, in block No. 19, in said Noble's addition to said city; also lots Nos. 7 and 8, in block No. 19, in Allen's addition to said city; also lot No. 5, in block No. 24, in Chapman's Second addition to the city of Houston; and all other real estate of any description whatsoever owned by either of the parties hereto, and situated in said city, together with all improvements thereon.'

."J. Burgheim (at the same time) executed and acknowledged two (2) instruments, both dated on the same date as the above instruments, one being in the form of a deed to James McDonald, conveying him as his separate property and estate the following property:

" 'Lots Nos. 7 and 8, in block No. 19; and lot No. 5, in block No. 76, in Noble's addition to said city of Houston; and lot No. 5, in block No. 25, of Chapman's Second addition to the city of Houston'—being the property in controversy in this suit.

"The other instrument was in the form of a deed to Mrs. Amelia McDonald, conveying to her as her separate property and estate the following property:

" 'Lot No. 6, in block No. 76, of the Noble addition to said city of Houston; lots 7 and 8, in block No. 19, in Allen's addition to the city of Houston, and all other real estate of any description whatsoever conveyed to said Burgheim by James McDonald and his wife, said Amelia McDonald, by deed of even date herewith, save and except such portions and parcels heretofore conveyed by me to the said James McDonald'—and being the remaining portion of the community property of Mr. and Mrs. McDonald. All three of these instruments were filed for record with the county clerk of Harris county, Tex. The value of the property described in each of the two instruments executed by Burgheim was approximately the same. There was no consideration for any of the instruments except the attempted division of the property.

"(4) The occasion for the attempted division of community property was the fact that Mr. McDonald had been drinking heavily and his wife feared that he would squander or dissipate all of their property, and they would be left without anything to live on in their old age. A partition by which one-half of the property would be set aside to each of them as separate property was therefore determined upon at the suggestion of Mrs. McDonald and was agreed to by Mr. McDonald, and the transaction set out in section 3 of these findings of fact was an effort to carry into effect the agreement to partition the community property between James McDonald and his wife, Amelia McDonald.

"(5) It does not appear that any part of the property undertaken to be partitioned was in fact dissipated or squandered. All of the property attempted to be set aside to James McDonald was on hand at the time of his death, and is involved in this present suit.

"(6) For the years intervening between the attempted partition and the death of James McDonald, his wife asserted the property for taxation for both of them, making two assessments each year, one in the name of her husband, which was the property described in the instrument from Burgheim to James McDonald, and the other assessment in her own name, which was the property in the instrument from Burgheim to her.

"(7) James McDonald died intestate June 2, 1905, leaving no child or children of their descendants or mother or father surviving him, but being survived by his wife, Mrs. Amelia McDonald.

"(8) The plaintiffs in this suit are the collateral kindred of James McDonald and are all of the legal heirs of James McDonald, deceased. They being all the descendants of his brothers and sisters, who are all deceased.

"(9) Mrs. Amelia McDonald died June 13, 1915, leaving a last will and testament, which was duly probated, by which all of her property was devised and bequeathed to Mrs. Mary Stevenson, wife of J. R. Stevenson, defendant herein. Mrs. Stevenson has all of the title and interest of Mrs. Amelia McDonald in all of the property above described.

"(10) Mrs. McDonald after the death of James McDonald on June 2, 1905, was and remained in continuous possession of the property in controversy, using and enjoying the same and claiming it all as her own up until April 30, 1913, when she conveyed one lot to

the defendant Mrs. Stevenson as hereinafter stated, and she, the said Mrs. McDonald, remained in possession of the remainder of the property in like manner and under like claim until her death on June 13, 1915, and thereafter the defendant Mrs. Stevenson was in continuous possession of all the property, using and enjoying same and claiming it all as her own up until the time of the filing of this suit on September 19, 1917, but no notice either on the part of said Mrs. McDonald or the defendant Mrs. Stevenson that they were claiming all the property was given the plaintiffs or any of them, who during such time were non-residents of Texas. It does appear, however, that one of the plaintiffs, John Cavanaugh, was in attendance at the funeral of said James McDonald, in June, 1905, and by deed dated April 30, 1913, said Mrs. McDonald conveyed to the defendant Mrs. Stevenson one lot of the premises in controversy, to wit, lot No. 5, in block No. 76, of the Noble addition. This deed was duly filed in the office of the county clerk of Harris county, Tex., and duly recorded in the deed records of Harris county, Tex., on May 8, 1913. The defendant Mrs. Stevenson after said lot was so conveyed to her, paid all taxes on same as they accrued, and was in continuous possession of same, using and enjoying and claiming it as her own under said deed until this suit for the recovery of one-half of the property in controversy was filed on September 19, 1917.

"(11) It appears from the evidence that subsequent to June 13, 1915, and after the death of said Mrs. Amelia McDonald, which occurred on that date, the defendants collected certain amounts as rent upon said property, and that they paid out certain sums for taxes on said property and for repairs and improvements thereon, and evidence was also introduced by defendants of improvements in good faith, but in view of my conclusions regarding the law applicable to the facts, I do not deem it material or necessary to determine the amount of money collected and disbursed by defendants, or to go into any matter relating to any accounting, or into the matter relating to improvements in good faith."

It is agreed by the parties that the only question in the case is whether the property in question was, at the time of the death of James McDonald, his separate property, or whether, notwithstanding the transaction with and through Burgheim, it remained the community property of said McDonald and wife. If it was his separate property, the appellants are the owners of one-half of it, and the judgment of the court below is wrong. If, on the other hand, it was community property, the appellees are the owners of all of it, and the judgment below is right.

[1] The steady and unbroken policy of the law of Texas has been to classify property according to the facts surrounding its acquisition, thus determining the interest and rights of the respective spouses. Therefore, property of the husband and wife in this state gets its character, as belonging separately to one of them, or in common to both, from the statutes defining their separate and community estates. Vernon's Sayles' Civil Statutes, arts. 4621–4623; Kellett v. Trice, 95 Tex. 160, 66 S. W. 51. The case, therefore, resolves itself into the inquiry: Did the facts essential to make the property in question separate property exist when the transactions took place; and if not, could the husband and wife, by their mere volition, make it such in the manner attempted?

[2] Mr. and Mrs. McDonald had continuously lived together as husband and wife from the time of their marriage to the time of this transaction, and so continued until the time of his death. Mrs. McDonald, with no thought of separating from her husband, but as he was drinking heavily, and fearing that he might squander all their property and leave them nothing to live on in their old age, suggested to him that they divide their property equally, it all being community property, and each take one-half as their separate property, to which suggestion McDonald agreed, and the transaction set out in the court's findings of fact were an effort to carry out this agreement. Under the statute, article 4621, supra, to have been separate property it must have belonged to the respective spouses at the time of their marriage, or have been acquired afterward by gift, devise, or descent. None of these facts existed. It is admitted that the property was community property, and it is not contended that the instruments were executed for the purpose of making a gift from the husband to the wife, or by the wife to the husband, but admittedly they were intended to change the status of their community property and convert it into the separate property of the respective spouses. It is clear to us that such could not be done. It would be directly in conflict with, and subversive of the statutory law regulating marital rights in this state, as well as of the law regulating descent and distribution. Speer's Law of Married Women, § 172; Vernon's Sayles' Civil Statutes, arts. 4617–4620. To give effect to such an agreement, would be, at the will of the husband and wife, by whatever motives actuated, to set aside and annul the express statutes of the state regulating the acquisition of property by husband and wife, as well as the law regulating its descent and distribution. and would be contrary to sound public policy.

[3] We therefore hold that the husband and wife cannot, by mere agreement, partition and transfer their community property one to the other, as in this case, and thereby change the class of the estate which the law fixes in each. Cox v. Miller, 54 Tex. 16; Green v. Ferguson, 62 Tex. 529; Proetzel v. Schroeder, 83 Tex. 684, 19 S. W. 292; Kellett v. Kellett, 23 Tex. Civ. App. 571, 56 S. W. 776 (writ denied); Kellett v. Trice, 95 Tex.

160, 66 S. W. 51. Speer's Law of Married Women, §§ 172, 278.

In Kellett v. ·Trice, supra, Judge Williams says:

"Property of husband and wife in this state gets its character, as belonging separately to one of them or in common to both, from the statutes defining their separate and community estates. Property which either of them owns before marriage and that whi¢h he or she acquires afterward by gift, devise, or descent is his or her separate property. Property acquired by either after marriage otherwise than by gift, devise, or descent is their common property. By construction, property which is acquired after marriage in exchange for separate property, or which is purchased with separate funds, is held to belong to that estate which furnished the consideration. Separate property of either spouse may be conveyed to the other ·in such way as to become his or her separate ·property, and community property may be so conveyed by the husband to the wife as to make it hers separately. This is true, not because the parties choose to name the property separate, but because the facts transpire to bring it within the statutory definition, and the law, operating upon such facts, vests title in accordance with them. The act of the parties is such as the law defines as necessary to create the separate right. Therefore, the question whether particular property is separate or community must depend upon the existence or nonexistence of the facts which, by the rules of law, give character to it, and not merely upon the stipulations of the parties that it shall belong to one class or the other."

Counsel for appellants contend that the case of Rains v. Wheeler, 76 Tex. 390, 13 S. W. 324, is authority for the proposition that:

"James McDonald and his wife, intending to divide their community property so that thereafter each would own one-half thereof as his or her separate property, having executed a deed which was legally acknowledged by both of them, whereby they conveyed all their community property to J. Burgheim, who thereupon conveyed the property in question, to James McDonald, and the remainder of the property, which was of equal value, to the wife, Mrs. Amelia McDonald, such transaction was valid, and the property so deeded to each·by Burgheim became and remained the separate property of the spouse to whom it was conveyed."

We do not believe the case is in point. That case is authority for the proposition that when a husband and wife have actually separated, or are in the act of separating, they may partition between themselves the community property, and such partition will be upheld, if entered into without coercion or other undue influence, and the terms are just and equitable. The facts of that case and the instant case are not at all on "all fours." Here there is no separation, nor thought of separation, of the spouses. In Corrigan v. Goss, 160 S. W. 652, Judge Harp-

er, of the El Paso Court of Civil Appeals, in construing Rains v. Wheeler, supra, says:

"It is clear that this agreement and partition deed were not intended to convey property by one spouse to another, but an equitable division, in view of final separation; that is, in view of no longer acting together in the acquisition of property, which the law fixes as community, or separate, according to its manner of acquisition, but each to take in the future such property as he may acquire as his own, unincumbered by marital relation."

We think Judge Harper clearly expresses the reason of the rule in such cases.

In the· language of counsel for appellees:

"It is to be· noted particularly the extreme care with which the courts of this state, in their several opinions dealing with partition agreements between husband and wife, and in which they have upheld such agreements made where there was an actual separation consummated, or in process of consummation, have limited their holdings to the cases where there were, in fact, such separations. * * * And in every instance the fact of separation was emphasized by the court as one of the considerations essential to the supporting of the partition. The reason for this is readily seen. With the husband and wife separated, there is, in fact, no joint effort and no joint accumulation of property. The rule .of our law, therefore, in such case, which holds that all property acquired by either the husband or wife (except that acquired by gift, devise or bequest or in exchange for separate property), is community property, can have no application because the facts themselves show. that such is not the case, since the spouses have separated, or are in the act of separating, and there will, therefore, be no further joint accumulation, or joint deeds. * * * It is as though the marriage had been dissolved by death."

While it is well settled that where a husband and wife have actually separated, intending to remain so, an agreement entered into by them fairly and equitably dividing their community property will be upheld; still they cannot, by mere agreement, without such separation, dissolve the quasi partnership which the law creates for them in reference to property pending the marital relation. Green v. Ferguson, 62 Tex. 525. And it seems, where they have separated and made such agreement and partition, a subsequent reconciliation and living together avoids the partition. Cox v. Mailander (Tex. Civ. App.) 178 S. W. 1012. So, an agreement between husband and wife, after marriage, that each should retain his or her separate property, and that the increase should remain separate property, has been held to be void. Engleman v. Deal, 14 Tex. Civ. App. 1, 37 S. W. 652 (writ denied). Also a contract by which the wife agrees not to claim her community interest is void. Proetzel v. Schroeder, 83 Tex. 684, 19 S. W. 292. Likewise, it has been held that where the wife, joined by her husband,

conveyed her separate property to a trustee to be conveyed back to her husband, reciting it was to be community property, was void. Kellett v. Kellett, 23 Tex. Civ. App. 571, 56 S. W. 766; Kellett v. Trice, 95 Tex. 160, 66 S. W. 51. Furthermore, it has been held that though a married woman can make, with persons other than her husband, a valid agreement to partition property owned by them jointly, she cannot make any such agreement with her husband, while they are living together. Crouch v. Crouch (Tex. Civ. App.) 70 S. W. 597 (writ denied).

[4] While the laws of Texas have ever permitted parties intending to enter into the marriage state to make and enter into whatever marriage contracts they please, provided they were not against good morals or contrary to some fixed rule of law, still it has always been the policy of the state to prohibit any such contract that would alter the legal order of descent. Vernon's Sayles' Civil Statutes, art. 4617. Hence, if they are not permitted to do so by marriage contracts before marriage, a fortiori, they cannot do so after marriage and pending the marital relation, for it is contrary to the policy of the laws of this state for a husband and wife to make contracts inter sese which are intended to, and if given effect would, change the order of descent, or the status of the property.

No error being shown, the judgment is affirmed.