## TAYLOR v. HOLLINGSWORTH,
### No. 11505.

Court of Civil Appeals of Texas. Galveston.
Feb. 25, 1943.

Rehearing Denied March 25, 1943.

Edw. C. Thomas and C. C. Carsner, both of Victoria, for appellants.

Wm. G. B. Morrison, of Houston, S. G. Sample, of Edna, for appellee.

MONTEITH, Chief Justice.

This action was brought by appellants, Dorothy Lambert and T. R. Lambert, both by next friends, in trespass to try title for the recovery from appellee, L. R. Hollings-worth, of the title to and possession of 4,336.5 acres of land comprising the Eli Mercer League in Jackson County, Texas. T. R. Lambert died prior to the trial and the suit was thereafter prosecuted by Dorothy Lambert, individually and as his heir.

Appellants sought to have a trustee's sale under a deed of trust executed by T. R. Lambert to secure the payment of a note for the sum of $25,980 set aside. Pleading in the alternative, they offered to do equity and pay any indebtedness that they might be lawfully adjudged to owe on the land in controversy. They specially pled that said note was barred by the four-year statute of limitations.

Appellee answered by general and special denials and a plea of not guilty. By cross-action he pled his title to the land in controversy, and limitations.

In a trial before the court without a jury judgment was rendered in favor of appellee and that appellants take nothing by their suit. At the request of appellants, the trial court prepared and caused to be filed his findings of fact and conclusions of law, to which findings and conclusions they duly excepted.

Jourdan Campbell, the stipulated common source of title to the land in controversy, conveyed the property to the Jourdan Campbell Land Syndicate, Inc., a corporation for which a receiver was later appointed. By deed dated November 3, 1930, said land was sold by the Jourdan Campbell Land Syndicate, Inc., through this receiver, with the approval of the court, to T. R. Lambert. As part of the consideration therefor Lambert executed and delivered to the vendor one purchase money note, in which a vendor's lien was expressly retained, for the amount of $25,980. This note was payable to the order of said receiver on or before two years after the date of the deed and bore interest at the rate of 7% per annum. On the same date, T. R. Lambert executed and delivered to the receiver a deed of trust conveying said land to John H. Cunningham as trustee as additional security for said purchase money note. The receiver, in making his report of the sale of said land to the court, asked for and obtained permission to sell said note to secure sufficient cash to pay taxes and discharge other obligations against said land, and on the same date and as part of the same transaction, said receiver, with the approval of the court, transferred and as-

signed the said Lambert note, with all the liens, rights, privileges and appurtenances pertaining thereto, to the Commercial Loan & Trust Company. By instrument dated September 30, 1931, the Commercial Loan & Trust Company transferred and assigned the note, with all liens and rights thereunder, to the Commercial National Bank of San Antonio, and thereafter, by instrument dated November 9, 1932, the Commercial National Bank transferred and assigned said note, and the liens and rights thereunder, to W. W. Moore, the agent of J. A. Hollingsworth, who thereafter, by instrument dated November 19, 1932, transferred and assigned the said note, and its liens and rights, to J. A. Hollingsworth.

By deed dated January 6, 1933, John H. Cunningham, as trustee under said deed of trust given by T. R. Lambert to secure the payment of said note, conveyed the land in controversy to J. A. Hollingsworth.

The trial court found that T. R. Lambert and Dorothy Lambert had failed to pay said note when it came due, or at any time, and that they had "made default and breach of the terms and conditions of the said deed and deed of trust", and that said foreclosure and sale "and all proceedings thereunder were in all things regular and free of fraud or unfairness, and in no wise or manner trenched upon or interfered with any right or remedy of plaintiffs", and that J. A. Hollingsworth thereby became the lawful owner of said land and premises free of any claim of appellants.

Thereafter, by deed dated April 14, 1933, J. A. Hollingsworth conveyed the property to the Navidad Cattle Corporation, who, by deed dated July 30, 1936, conveyed said land to appellee. By assignment dated August 4, 1936, J. A. Hollingsworth transferred and assigned any balance due upon the T. R. Lambert $25,980 note, together with the liens securing it, and all rights thereunder, to appellee.

By deed dated March 5, 1931, T. R. Lambert conveyed the land in controversy to his wife, Dorothy Lambert, as her separate property and estate, the deed reciting good and valuable considerations and the assumption by the said Dorothy Lambert of the payment of said note for the sum of $25,980. Thereafter, by deed dated June 10, 1931, Dorothy Lambert, joined by T. R. Lambert, conveyed said land to Mrs. Lambert's daughter, Artie Taylor, and by deed of the same date Artie Taylor and husband,

Edgar Taylor, conveyed said land to "T. R. Lambert and wife, Dorothy Lambert" for recited valuable considerations and the assumption of said $25,980 note.

On April 6, 1932, Dorothy Lambert was adjudged to be a person of unsound mind in the county court of Jackson County and she was thereafter committed to a State Hospital for the Insane in San Antonio, Texas. On July 19, 1932, her husband, T. R. Lambert, was duly appointed guardian of her person and estate by said court. He served as such guardian until the guardianship proceeding was closed by order of said court entered April 18, 1938.

By deed dated September 13, 1932, T. R. Lambert, individually and as guardian of the estate of Dorothy Lambert, N. C. M., conveyed the land in controversy to Mark V. Lambert, subject to said $25,980 note. The court found that this instrument conveyed any title had or claimed by T. R. Lambert in the land in controversy, but that it was void in so far as it attempted to convey the separate estate of Dorothy Lambert. Mark V. Lambert had disclaimed any interest in said property.

The court found that J. A. Hollingsworth took possession of said land, which was then in a rundown and neglected condition, in the latter part of 1932, and that appellee and his predecessors in title had been in open, adverse, continuous and undisputed possession by actual and visible appropriation of the property, commenced and continued under a claim of right inconsistent with a hostile claim of appellants, cultivating, using and enjoying the same in the manner to and for which it was suitable and to the full extent of its boundaries under fence, holding under deeds duly registered, since December, 1932, and that they had paid all taxes levied and assessed against said land in each and every year consecutively for the years 1932 to 1941, both inclusive, before they became delinquent, and without break.

The court further found that appellee and his predecessors in title had, during the time they were in possession of said property, made permanent and valuable improvements thereon to the value of $30,476.

The court found that, at the request of T. R. Lambert, J. A. Hollingsworth met him in Edna, Texas, in January, 1933, and sold him such personal property as he then had upon the ranch and that, at that time, Lambert "apparently voluntarily surrendered the

premises to J. A. Hollingsworth and accepted payment for this personal property."

The court found, as a matter of law, that at all times after the execution of said vendor's lien note by T. R. Lambert, and at the time of the foreclosure of said note and lien in January, 1933, the property in question was the community property of T. R. Lambert and Dorothy Lambert.

The controlling question presented in the appeal is whether the land in controversy was the separate property of Dorothy Lambert on the date of its purchase at said trustee's sale. Unless appellants have established this fact, their cause of action must fail.

█ It is settled by the decisions of this State that under Section 15 of Article 16 of the Constitution of the State of Texas the separate property of the wife is limited to that property owned or claimed by her before marriage and that acquired by her thereafter by gift, devise or descent. It is held that the language of this article of the Constitution prescribes a test by which to determine whether an acquest by the wife becomes a part of her separate estate or a part of the community estate. The test during coverture relates to the method by which the property is acquired. If the method of acquiring the property be by gift, devise or descent to the wife, then, under the Constitution, the property becomes a part of her separate estate. If the method of acquiring the property during the marriage be other than by gift, devise, or descent, then the property falls without the class of the wife's separate estate, as fixed by the Constitution, and becomes part of the community estate. Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799.

█ While the wife may exchange her separate property for other property and she may sell her separate property and reinvest it in other property, in either of which events the property acquired becomes her separate property, she cannot increase her separate property by methods other than by gift, devise or descent.

Since the land involved in this controversy was not acquired by Dorothy Lambert by devise, the only other methods by which it could have been legally acquired by her as her separate property were by gift or through purchase with her separate funds or in exchange for her separate property.

█ The deed of March 5, 1931, from T. R. Lambert conveying said property to her as her separate property, contained nothing to indicate any purpose or intention other than that of making a sale of the property. From the recitations of the deed it is evident that the conveyance was not intended as a gift to her, for the reason that it calls for the payment of "good and valuable considerations" passing to T. R. Lambert, the acknowledgment of a receipt thereof and the assumption by her of the payment of said $25,980 note, no part of which was ever paid and for the payment of which she could not have been held personally liable. Keys v. Tarrant County Building & Loan Ass'n, Tex.Civ.App., 286 S.W. 593; Johnson v. Scott, Tex.Civ.App., 208 S.W. 671; Benjamin v. Youngblood, Tex.Civ.App., 207 S.W. 687; Poe v. Hall, Tex.Civ.App., 241 S.W. 708, 712.

█ While appellants contend that Dorothy Lambert contributed certain property belonging to her separate estate to the purchase of the land in question, we do not think the facts sustain this contention. The record shows that the deed by which the property given in exchange for the land in controversy was acquired conveyed the property to "T. R. Lambert and Dorothy Lambert" and the deed to the property given in exchange and executed as a part of the purchase price for the land in controversy was executed by T. R. Lambert and wife, Dorothy Lambert. Since every reasonable intendment must be resolved in favor of the court's express finding that at all times material to this suit the land in controversy was the community property of T. R. Lambert and Dorothy Lambert, it is to be presumed that the court found that the land conveyed by the Lamberts as a part of the purchase price for the land in controversy was community property, and that Dorothy Lambert did not contribute any separate funds to said purchase. In which event the land in controversy retained the status which had been fixed upon it at the time of its acquisition by T. R. Lambert as community property, and was not the separate property of Dorothy Lambert.

Under the above record, we think that the finding of the trial court, upon what we deem to be sufficient evidence, that, at all times after the execution of said vendor's lien note by T. R. Lambert, the land in controversy was the community property of T. R. Lambert and Dorothy Lambert, presents

the controlling question in the case and requires an affirmance of the judgment of the trial court.

We have carefully considered all other points presented in appellants' brief. None of them, in our opinion, show error in the record which requires a reversal of the case.

The judgment of the trial court will therefore be, in all things, affirmed.

Affirmed.