Estate of E. W. Hunt, Deceased, Viola Hunt, Executrix, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 12659. Promulgated December 6, 1948.

*R. B. Cannon, Esq.*, for the petitioner.
*J. Marvin Kelley, Esq.*, for the respondent.

HARLAN, *Judge*: Article XVI, section 15, of the Constitution of the State of Texas provides:

All property both real and personal of the wife owned or claimed by her before marriage, and that acquired afterwards by gift, devise or descent shall be her separate property.

Under a directive of said constitution to pass laws defining the rights of the wife thereunder, section 4614 of Vernon's Civil Statutes of Texas was enacted, and it provides:

All property of the wife, both real and personal, owned or claimed by her before marriage and that acquired by gift, devise or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife. The wife shall have the sole management, control, and disposition of her separate property, both real and personal; * * *

Since Viola Hunt did not own the south half of the Hunt ranch before marriage, nor receive it by devise or descent, our sole question herein is as to whether the conveyance of this real estate by her husband to her in November 1940 constituted a gift to her.

The courts in Texas have been most jealous in limiting the manner in which a wife may acquire separate property to the specific categories set forth in the constitution and the statutory provisions above set forth. In fact, in the case of *Arnold* v. *Leonard* (1925), 273 S. W. 799, the Supreme Court of Texas had before it the interpretation of the provision of section 4614 of Vernon's Civil Statutes that "the increase of all lands thus acquired shall be the separate property of the wife." The court held that the legislature had no authority under the constitution to put such a provision into the law and that, since the property involved was not owned before marriage or acquired by gift, devise, or descent, it was not the wife's separate property. The court said:

When the Constitution says that as to property now owned or claimed by the wife at marriage, it becomes her separate property when acquired in one of three specific modes, the Legislature is prohibited from saying that property acquired after marriage in some other mode may also become the wife's separate property.

The Commissioner denies that a mutual exchange of community interests in community property so as to make the property involved, as divided, the separate property of each member of the marital community is permissible under the Constitution and the statutes of Texas. He cites *Kellett* v. *Trice*, 66 S. W. 51, and *McDonald* v. *Stevenson*, 245 S. W. 777, as his principal authorities. Neither of these cases bears upon a situation similar to the case at bar. There are a number of authorities in Texas which hold that gifts between husband and wife of an interest in community property may be made by either

spouse so long as the transaction is free from inequities, does not interfere with the rights of creditors, nor materially impinge upon the state law of descent. *Cauble* v. *Beaver Electra Ref'g. Co.*, 115 Texas 1.

However, pertaining to a situation similar to the case at bar, we have neither found, nor have we been furnished with, any authorities from community property states. A case almost completely on all fours in legal principles with the case at bar was before the Board of Tax Appeals in *Marrs McLean*, 41 B. T. A. 565. We have not had the benefit of a discussion of that case in the brief of either of the parties, in spite of its close proximity in facts and legal principles to the one under consideration. In that case Marrs McLean and his wife entered into a written agreement in which it was specifically stated:

It is their mutual desire to divide a portion of said community estate, share and share alike, to the end that one-half of said entire portion of said community property herein designated shall constitute the sole separate property of each.

By the agreement each spouse released his or her interest in certain securities which belonged to the community in favor of the other party to the marital community and subsequently the stock certificates were procured physically by each spouse according to the terms of the agreement. Thereafter each spouse created a trust out of the securities so received and directed the trustee to hold the corpus and accumulate the income for a period of ten years, whereupon the income was subject to the disposition of the settlor's spouse, and the corpus of the trust, with the accumulated income not consumed by the settlor-spouse. was to pass upon the death of the spouse to the daughter of the settlors. The question before the Board was as to whether or not the trust income was taxable to the settlors. The Commissioner contended therein that the division of the property between the spouses was not permissible under the Texas law and that therefore the trust was void and the income taxable to the settlor. In discussing the legality of the division the Board said:

There is no suggestion that the agreement of December 29, 1934, was in any respect unjust, inequitable, or unfair. It affected only a small part of the property of this community. It referred to specific property and purported to make an equal division of that property between the two spouses.

However, the approval by the Board of the legality of the division of property involved in the *McLean* case became little more than *obiter dicta* when the Board found that the trusts were valid, regardless of the legality of the division of the property between husband and wife, inasmuch as the husband joined in the wife's trust agreement. On this point the Board said:

However, even if the agreement whereby the petitioner's attempt to make the property separate property was invalid, still it would not follow that the trusts themselves were invalid. Marrs McLean was a party to each agreement. No

authority is cited to show that valid trusts can not be created from Texas community property or that Marrs McLean could not place community property of this community in those trusts.

Since, therefore, the question before the Board was resolved regardless of the validity or invalidity of the division of community property, this case can not be accepted as an unqualified authority for the legality of such a division between husband and wife, and it is to be noted that the Board in the *McLean* case cited no authority in support of the conclusion pertaining to the legality of the division.

The accepted definition of a "gift," which has been quoted so frequently that authorities are unnecessary, is: "A voluntary transfer of property by one to another without any consideration or compensation therefor."[1] The transaction between E. W. Hunt and Viola Hunt pertaining to their division of community property certainly could not come within that definition. By their agreement, Viola Hunt would have received nothing if she had not at the same time transferred to her husband property of equal value. The very purpose of the plan, which both parties understood, necessitated that Viola Hunt return to her husband as much property as she received, so that both parties could be in a position to apply for and receive the new loan. She knew that out of the proceeds of the loan she was to get nothing for her separate use; that it was all to go to the community. Neither party in their deeds expressed any word signifying donative intent or a consideration of "love and affection." To this extent at least the case at bar is to be distinguished from the *Marrs McLean* case because the parties therein did express a mutual consideration of "love and affection." After Viola Hunt had received her half of the ranch and stock, her husband continued to manage it in exactly the same way as he had done prior to the alleged gifts. Neither party to this transaction reported any gift to the other for gift tax purposes, and for a donor with the background and experience of E. W. Hunt to fail to report a gift or pay a tax thereon if he considered a gift to have been made is almost unthinkable.

Viola Hunt, in her application for a loan, stated that she had received the property as a result of a "division." Evidently she did not consider herself as having received a gift, and she listed all cattle, including those on the south ranch, as being community property in the administration of her husband's estate.

That concurrent transfers made by two spouses in pursuance of a definite agreement can not be considered gifts for the purposes of taxation, is strongly indicated by another case involving Marrs McLean in 41 B. T. A. 1266. In that case Marrs McLean and his wife, in a different year than the one involved in the preceding case, made simultaneous transfers to each other for the purpose of creating trusts for

---

[1] Mertens, Law of Federal Income Taxation, vol. 1, p. 242.

the primary benefit of their daughter. In that case the Commissioner was attempting to collect a gift tax on the transfers and the petitioners contended that the transfers were not gifts, but were made for an adequate and full consideration. The Board therein, however, held that merely because the transfers were simultaneous it did not follow that one was made in consideration of the other. The decision then said:

The fact that the transfers were in equal amounts and made at the same time does not show that one was made in consideration of the other. *If any agreement existed between the petitioners for the creation of the trusts and for the transfers, that fact would be best known to them and they should have proved it.*[2] [Italics supplied.]

The Board then concluded that the transfers were gifts. However, the implication is inescapable that, if the transfers had been dependent upon and in consideration of each other, as the petitioners therein contended, the Board would have held the transfers were not gifts.

In the case at bar there is no dispute between the parties but that the transfers between E. W. Hunt and Viola Hunt were made each in consideration of the other and had a common purpose that could not have been achieved without mutual transfers being made.

The petitioner also objects to taxing in the estate of E. W. Hunt the value of the cattle which were on the south ranch when that was deeded to Viola Hunt. In her testimony she said that her husband gave her these cattle and she gave her husband the cattle on the north ranch at the time of the exchange of deeds. However, in the appraisement of her husband's estate, all of the cattle were listed by the executrix as community property. All that has been said pertaining to the transfers of the real estate not being gifts applies with equal force to the cattle.

It is therefore our conclusion that the transfer of the south half of the ranch and the livestock thereon made by E. W. Hunt to Viola Hunt in 1940 was not a gift and, therefore, did not, under the Constitution of Texas, become the separate property of Viola Hunt.

As to the value of the stock in the Olney bank, the notice of deficiency contains the following statement:

It is held that the 199 shares of stock of the First National Bank of Olney, Texas, were owned in community by decedent and surviving spouse and had a fair market value at date of decedent's death of $119,400.

Thus, the Commissioner contends that this stock was worth $600 per share.

It is our conclusion that a value of $400 per share, as contended for by the taxpayer, is correct. All the sales with which the record deals from 1941 to 1945 give this stock a market value of $400 per share. Within a few days after the death of E. W. Hunt, the president of the bank, the stock, which had been consistently selling for

[2] This language was quoted with approval in *Commissioner* v. *McLean,* 127 Fed. (2d) 942.

$400 a share, again sold for $400 per share, although there is substantial testimony that its market value was probably less at that time than it had been prior to the death of E. W. Hunt.

The Commissioner contends that this value is less than the book value and less than its dividend-paying record and the financial records of the bank would justify. In view of the fact that there was a sale of twenty shares of this stock within a few days after E. W. Hunt's death from the president of the bank to a director of the bank, both of whom were informed as to the value of the stock and neither of whom was under any compulsion to sell, and that there is no evidence that the vendor in that transaction had any purpose to make a gift to the vendee, we feel that $400 per share represents the true market value of the stock on that date. Also, on January 15, 1945, Viola Hunt herself sold ten shares of this stock at $400, which is convincing evidence that such a value correctly reflects the market value of this stock.

As to petitioner's contention that the respondent's allowance of $3,000 for attorney fees is insufficient, we can only say that, so far as this record is concerned, there is nothing upon which we can determine any other amount. The only testimony with reference to attorney fees is that of Mrs. Hunt herself, which is of a very indefinite character. Speaking of attorney fees, she said: "I know it will be $3,000, and I rather think between seven and $8,000."

Q. Why do you know it will be $3,000?
A. Well, because in the case that we have—
Q. This case here, is that the amount of compensation involved in this case?
A. Not—I don't know just how much it will be, but I know the least amount will be $3,000.
Q. Why do you say you think it will be $7,500 or $8,000?
A. It may take it farther.

We have no testimony of an attorney as to the reasonable value of the services, the amount of work involved, or the prospects of litigation. Therefore, we are in a position where we can only support the presumption of correctness of the Commissioner's determination.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

JOHNSON, *J.*, dissenting: The south ranch, which decedent conveyed to his wife by warranty deed several years prior to his death, was, in my opinion, her separate property, not the property of the community, and hence not includible in decedent's gross estate. The deed expressly stated that the land was conveyed to the wife "as her own separate property," and it was also stipulated in the consideration that the payments made and to be made therefor were "out of her own separate funds."

The majority's contrary conclusion is based on the finding that the conveyance to the wife was not a gift, and, under their interpretation of Texas law, unless the transaction was a gift, the property conveyed did not become her separate property. With this holding I can not agree. It seems settled that under Texas law that "a deed from the husband to the wife can have no other effect but to vest in her a separate estate in the subject matter  *  *  *." And a conveyance similar to that here considered was held to have such effect in *Bird* v. *Lester* (Tex. Civ. App.), 166 S. W. 112 (writ of error refused by Supreme Court). It there appeared that:

> * * * Lester * * * had conveyed the property to his wife, Loula Lester, by deed reciting a valuable consideration and duly recorded in the deed records of Garza county. The effect of this conveyance was to vest title to the section of land in Mrs. Lester as her separate property. *Emery et al.* v. *Barfield*, 156 S. W. 311; *Jones* v. *Humphreys*, 39 Tex. Civ. App. 644, 88 S. W. 403; *Watts* v. *Bruce*, 31 Tex. Civ. App. 347, 72 S. W. 258; *Hardin* v. *Jones*, 29 Tex. Civ. App. 350, 68 S. W. 836.

Decedent and his wife meticulously followed the method whereby specific community property may be divided and converted into the separate property of each spouse. The husband conveyed the south ranch directly to the wife as her separate estate, and it became such under the above cited decisions. The husband and wife conveyed the north ranch to a trustee, who reconveyed it to the husband as his separate estate, and that was effective to create a separate estate in him. *Barnett* v. *Barnett*, 206 S. W. (2d) 273. Whether or not such conveyances were gifts for Federal gift tax purposes is here immaterial, since under Texas law they were effective to create separate estates in the spouses. See discussion in *Taylor* v. *Hollingsworth*, 176 S. W. (2d) 733, wherein the Supreme Court of Texas explained and restricted *Kellett* v. *Trice*, 95 Tex. 160; 66 S. W. 51, and, without mentioning in its opinion the gift character of the conveyance, which had been the sole basis for the decision of the case by the Civil Court of Appeals, *Taylor* v. *Hollingsworth*, 169 S. W. (2d) 519, reached the same conclusion upon a different and inconsistent ground.

*McDonald* v. *Stevenson*, 245 S. W. 777, cited in the majority opinion, is not applicable. There the husband and wife by agreement between themselves attempted a conversion of their entire community estate into two separate estates. Here specific property and only a part of the community estate is involved and the transaction rests not upon agreement, but by properly executed conveyances in which the title passed and the rights of a third party (the Federal Land Bank) intervened. In Texas the husband and wife may not make agreements between themselves which have the effect of altering the statutory regulations governing the management of the community or the descent and distribution thereof, "but in the matter of dealing with

specific property belonging to the community, either may *donate*, *mortgage* or *convey* to the other his interest therein." (Emphasis supplied.) 23 Tex. Jur. 156, § 127. See also 23 Tex. Jur. 32, § 20, where it is said that the inhibition between husband and wife in dealing with the community "has no reference whatever to those individual transactions, as such, which effect only a property right in a particular subject matter."

Our holding in *Marrs McLean*, 41 B. T. A. 565, in my judgment, is in conflict with the majority opinion here.

For the reasons stated I respectfully dissent.

VAN FOSSAN, MURDOCK, HILL, and DISNEY, *JJ.*, agree with this dissent.